JOHN W. LAMB AND WILLIAM H. LAMB v. THE CONSTANTINE HYDRAULIC CO.

*Lease of water power, construed.*

Complainants were the owners of a flouring mill at Constantine, Michigan, operated by water power furnished them under a lease from defendant, for a term of ninety-nine years at an annual rental of five dollars per horse power for the first seven years, at the expiration of which time they were to pay "an annual rental, the same as asked of other parties *renting*, not to exceed, however, the sum of twenty dollars per horse power per year." At the expiration of the seven years, defendant notified complainants "that the rental for the ensuing five years had been fixed at ten dollars per horse power, that being the price *now asked* of other parties desiring to rent for a term of five years." At this time defendant had only one other lessee of water power whose rental was the same as complainants.

*Held*, in a suit by complainants to establish their rights under the lease and determine how much they are legally obliged to pay as water rent, "that the purchase of the land and erection of the flouring mill, involving a large outlay, and the long term for which the water power was leased, preclude the idea that it was the intention of the parties that the lease should terminate at the end of seven years, in case no other parties were then renting of defendant; hence the agreement cannot be construed as conditional upon the fact that the defendant should, at the expiration of the seven years, be renting water power to other parties."

*Held*, further, as the proper construction of the lease, "that if at the end of the seven years the circumstances and facts upon which the rental was to be *then* fixed did not exist, but everything remained in the same state as when the lease was made, the original rental

should continue until the rule contemplated by the parties, as evidenced by the lease, should come into existence and form a new basis upon which to determine the amount to be paid.

Appeal from St. Joseph. (Pealer, J.) Argued January 14, 1886. Decided February 10, 1886.

Bill filed to construe a lease. Complainants appeal. Decree below modified and one entered in Supreme Court according to opinion. The facts are stated in the opinion.

*David Knox, Jr.* and *Dallas Boudeman*, for complainants.

*H. H. Riley* and *Howard & Roos*, for defendant:

Briefs are confined to a discussion of the testimony.

CHAMPLIN, J. The complainants are the owners of a certain flouring mill at Constantine, Michigan, operated by water-power. The defendant is a corporation owning a water-power at Constantine, and is known as the Constantine Hydraulic Company. A portion of its power is used by the complainants in operating their mill. The company was incorporated under a special act of the Legislature approved March 25, 1867. It afterwards erected a dam across St. Joseph river, and built a system of races on both sides thereof, the work being completed in 1873. The facts preceding the filing of the bill, briefly stated, are as follows: In 1877 the real estate upon which is situated the mill now owned by complainants was owned by Jonathan Lantz and Sarah S. Foreman, and in contemplation of building the flouring mill above mentioned the last named parties obtained from the defendant a lease of fifty horse-power of water, to be used in the operation of their proposed flouring mill, the period of said lease being ninety-nine years; and the agreement on the part of Lantz & Foreman was that they would pay for said power "an annual rent of two hundred and fifty dollars per year for the first seven years, and after the expiration of that time, and from the first of March, A. D. 1884, the parties of the second part (said Lantz & Foreman) do hereby

agree to pay an annual rental, the same as asked of other parties renting, not to exceed, however, the sum of twenty dollars per horse-power per year, said rent to be paid semi-annually on the first days of July and January each year."

This lease provided that no transfer should be made by second parties in said lease without the written assent of the president and secretary of the company.

After it was made Lantz & Foreman assigned one-third interest therein to Henry Brown; and afterwards, April 26, 1877, Sarah S. Foreman assigned the balance of her interest to Jonathan Lantz, and soon after this Lantz & Brown proceeded to erect the flouring mill above referred to, and commenced the operation of it with the power furnished by defendant company under said lease.

In April, 1878, Lantz & Brown executed a mortgage on their mill property, which was afterwards foreclosed and the property bought in by the Farmers' National Bank of Constantine, which sold same to complainants in April, 1881; and at the time complainants so purchased they received from said bank the lease above mentioned, although no formal written assignment was made to them at that time. Complainants, however, continued to pay the rent to defendant, and the rent was duly accepted and receipts given until the end of the seven years mentioned in the lease; and before this suit was commenced complainants obtained assignments in writing from Lantz & Brown.

On February 27, 1884, defendant wrote a letter to complainants, stating that the time for which they had leased the water-power at five dollars per horse-power would expire on March 1, 1884, and that it would be necessary to fix on a price for the future; and afterwards, on March 11, 1884, notified complainants that at a meeting of the defendant corporation, held on that day, it was moved and voted that the secretary notify complainants that the defendant had "fixed the price for water under their lease from the first day of March, 1884, until the first day of March, 1889, at ten dollars per horse-power, that being the price now asked of other parties desiring to rent for a term of five years."

Up to this time complainants had been substantially in charge of the head-gates of the race leading to their mill, and the waste-gates of the same race near their mill, so far as necessary in regulating the supply of water and the shutting it off and letting it on from time to time, as it became necessary or convenient to use their mill, there being no other manufactory on the same race.

On July 24, 1884, complainants had a washout at their flume leading to their mill, and at or about the same time there was also a washout at the wasteway of defendant's main-race, which supplies water to complainants' mill. Complainants at once proceeded to repair the break at their flume, and to do this shut the water off at the head-gates at the dam, so that the race would be dry, and repaired their flume and completed it within six days.

It was the defendant's duty to repair the break at the wasteway aforesaid, which was a trivial matter in comparison with the work complainants had to do in repairing the break at their mill, but the defendant, by the terms of its lease, had the right to thirty days in each year in which to make repairs; and after the washout occurred, and defendant had been notified of it by complainants, it tore off a few boards at the wasteway to let the water out of the race. After the washout was repaired by complainants at their mill, they notified defendant several times that they were done, and requested defendant to complete its repairs, so that the water could be let in and used by them. The reply which they received from defendant was that they, complainants, had no lease of any water, and that until they got a lease they could have no water. Following this up, defendant partly completed its repairs, but, with the intent of depriving complainants of the use of the water, defendant not only did not finish its work properly, but when completed, after its fashion, raised the waste-gates and locked them up so that water would not remain in the race. Complainants waited until more than thirty days had expired, and the defendant refusing to complete its work, complainants, at their own expense, completed

it, and turned the water into their mill as they had before been in the habit of doing.

In consequence of the claim of defendant that complainants had no lease for the water, and because of the refusal of defendant to put the water into the race, and defendant's threat that complainants should not have the use of the water under their aforesaid lease unless they paid ten dollars per horse-power per annum for five years, and the defendant's further threat to deprive complainants entirely of said water, which would be to the great and irreparable injury of complainants, this bill was brought.

The object of this bill is to establish the rights of complainants to the lease in question; to determine how much complainants are legally obliged to pay as water rent; and to restrain the defendant from interfering with the complainants in the use of the water upon the payment of such rent as they are legally holden to pay, which complainants are willing to pay; and they claim that the defendant was not at the time of the foregoing occurrence asking and receiving from any other person, firm, or corporation as rent more than five dollars per horse-power per annum for water.

Before commencing suit complainants tendered the amount due at the rate of five dollars per horse-power.

The cause was heard upon pleadings and proofs, and a decree rendered

"That the basis fixed in said lease to determine the rental value per annum of the water per horse-power, after the first of March, A. D. 1884, has failed for the reason that there were no 'other parties' renting at that date within the meaning of the terms of said lease, and consequently said rental value must be determined by what the same was reasonably worth during said period from March 1, 1884, to the date of this decree, and the parties in said cause desiring the court to fix under his construction of said lease the rights of the parties with respect to such rental; therefore it is ordered, adjudged, and decreed that said complainants pay to said defendant as such rent, for and during said period, the sum of six hundred sixty-six and 66-100 dollars, as follows: One hundred sixty-six and 66-100 dollars as such rent from the first day of March, A. D. 1884, to the first day of July, A.

D. 1884, with the interest thereon at seven per cent. after said first day of July, A. D. 1884; two hundred and fifty dollars as such rent from the first day of July, 1884, to the first day of January, 1885, with the interest thereon at seven per cent. from the first day of January, 1885; and two hundred and fifty dollars as such rent from the first day of January, 1885, to the first day of July, 1885, with interest thereon from said first day of July, 1885, at seven per cent., said last mentioned payment payable July 1, 1885."

The foregoing is a sufficient statement to dispose of the question raised by the record, which is simply the proper construction to be placed upon the agreement between the parties. The lease in question was the first lease of water-power the hydraulic company had executed after the works were completed in 1873. This lease is dated in 1877. It is quite a significant fact that there had been no demand for the use of water-power for four years after the works were fully completed. It may bear upon the construction which should be given to the lease in two ways : *First*, as affecting the minds of the officers of the company towards making a lease with very liberal terms to the lessee, as well in the amount of rent to be paid as other provisions for his benefit; and, *second*, as showing what both parties to the agreement understood would be a reasonable and proper amount of rent to be paid, in the absence of the rule adopted by them in the instrument.

The term of the lease was for ninety-nine years. The rent for the first seven years, ending March 1, 1884, was agreed upon at $250 a year. After that time the lessees were to pay an annual rental, the same as asked of other parties renting, not to exceed, however, the sum of twenty dollars for a horse-power per year. It is evident that both parties contemplated that at the end of the seven years there would be other parties renting at a fixed yearly rental, and that these lessees were not to pay any more than such other parties, up to the limit of twenty dollars for each horse-power.

It is claimed that because a limit is placed above that being paid for the first seven years it is to be inferred that the parties contemplated that such rent, after the expiration of the

seven years, would be more than the rental fixed during such time. But no such inference necessarily follows. If, at the end of the seven years, the lessors were leasing water-power to other parties at the rate of three dollars a horse-power, they could not charge these lessees any more than that. It turns out, however, that at the end of the seven years the lessors were not renting water-power to other parties, and it also appears that this contingency was not due to any act or default of the hydraulic company. They had endeavored to induce manufacturers to locate in Constantine, and offered favorable inducements for them to do so, but only succeeded in getting one other person to rent water-power of them, and at the time the seven years expired this person was renting for five dollars a horse-power.

This is not a case where the impossibility of performance was known to the parties at the time the contract was made, and therefore it cannot be said that there was no intention of performing it on one side and no expectation of performance on the other, and for that reason the essentials of a valid promise in regard to the payment of rent was wanting. The parties came to their agreement in ignorance that the payment of rent to be measured by rental to other parties would, at the end of the seven years, be impossible. This occurred with full knowledge on their part that the fact was uncertain, and might be one way or the other; and the question is whether there can be gathered from their agreement an intention to provide for such uncertainty. In such cases the question appears to be whether upon the construction of the agreement, as applied to the circumstances, it has been made conditional upon the supposed possibility of performance, or whether there is an absolute unconditional contract according to the terms expressed.

The purchase of the land and erection of the flouring mill involving a large outlay, and the long term for which the water-power was leased, preclude the idea that it was the intention of the parties that the lease should terminate at the end of seven years in case no other parties were then renting power of the hydraulic company. The agreement can-

not, therefore, be construed as conditioned upon the fact that the company should on the first day of March, 1884, be renting water-power to other ·parties.   On the contrary, it seems to me to be the proper construction that if at the end of the seven years, the circumstances and facts upon which the rental was to be then fixed did not exist, but everything remained in the same state as when the lease was made, that then the rental that the parties had fixed and agreed upon as the rental, under such circumstances, should continue to be the rental until the rule contemplated by the parties should come into existence and form a new basis upon which to determine the amount to be paid.   The parties agreed upon the terms under a given state of facts, which were mutually satisfactory, and which were to continue a certain time, when they supposed another state of facts would exist.   When the time came it was found that the facts and circumstances were the same as when the agreement was made.   The natural presumption arising is that the terms of the agreement, which were dependent upon a change of facts, continue until the exigency arises which authorizes a change in the rental to be paid.

It is claimed by the defendants that, inasmuch as the basis upon which the rental could be determined at the expiration of the seven years did not exist when the time expired, and became, therefore, impossible of ascertainment, therefore the company should be entitled to receive what the use of the power rented was reasonably worth.   But this would be to make a new contract between the parties, to which neither have agreed or assented to.   The rental based upon reasonable worth, as the proof shows, would be quite vague and uncertain, and necessitate each year a resort to a trial before a jury to determine.   Besides, so many elements would enter into the solution of the question that it would be an impossibility to arrive at any satisfactory conclusion.   On the one hand, it might be contended that water-power that was not wanted by manufacturers at any price, and that it was impossible to sell or rent at Constantine, was worth nothing; while, on the other hand, evidence of the value of the use of

water-power at South Bend and other places would not furnish a just or true criterion of value at Constantine.

The lessee, moreover, is in no wise responsible for the want of a definite rule to measure the rental on the first of March, 1884. That rule must of necessity have depended upon the acts of the company after the agreement was entered into, and I think the agreement must remain as it is until a rule shall be established by the rental, in good faith, to other parties, at terms different from that fixed in the lease for the first seven years. By the plain terms of the lease the rental, after March 1, 1884, is subject to be fixed and to fluctuate annually according to the rental paid and asked by other parties. Until other parties do rent at a different rate per annum than five dollars a horse-power the rental will remain as fixed by the parties in the agreement.

The decree of the court below must be modified, and a decree entered here in accordance with this opinion. The complainants will recover costs.

The other Justices concurred.