GORDON *v.* CONSTANTINE HYDRAULIC CO.

1. MORTGAGES — MILLING PLANT — LIEN FOR WATER POWER — NOTICE TO MORTGAGEE.

Where one about to loan money visited the property, a milling plant, upon which he was to be secured, and was told that the water power was supplied to the plant under an arrangement with a local company which controlled it, upon terms of payment of which he was partially informed, though he was not told that the agreement had been reduced to writing, he was put upon inquiry as to its terms, and was chargeable with notice that it embodied a provision giving it the effect of a mortgage upon the premises.

2. CORPORATIONS—COMPROMISE OF CLAIM—RATIFICATION.

The board of directors of a corporation, which controlled a water power, provided by resolution that, unless a lessee of the power made satisfactory arrangements for the payment of rent in arrears, proceedings for collection should be instituted.   Thereafter the president of the corporation gave to the lessee a receipt for six months' rent at a specified rate, which recited that it was with the understanding that the accrued rent should be paid at the same rate.   The board of directors, at a subsequent meeting, approved of the compromise whereby the president "receipted in full for six months' rent," but declared that the resolution adopted at the previous meeting should remain in force.   *Held*, that there was no

ratification of the president's attempt to fix the basis of computation for the rent in arrears.

3. LEASE—LIEN FOR RENT—TENDER—DISCHARGE.

A lessor's lien for rent, under a mortgage clause in the lease, is discharged by a tender of the full amount due.

4. PRIORITY OF LIENS—EQUITY—SET-OFF.

Where a mortgagee of milling property files a foreclosure bill, joining as defendant, with the mill owners, the lessor of the water power, and the latter, upon a cross-bill, establishes his right, under a mortgage clause in the lease, to a prior lien for water rentals, and it appears that the property is insufficient to satisfy both liens, the mortgagee will be permitted to avail himself of the mortgagor's right to a set-off against the lessor for damages arising from his shutting off the water during a controversy over the rent.

5. DAMAGES—FLOUR MILLS—WATER SUPPLY—DEPRECIATION IN WHEAT.

Damages for failure to supply water to a mill according to a contract may include loss from depreciation in wheat purchased for use in the mill, during the time the water was withheld, where it could have been saved if the water had been turned on, and the wheat manufactured into flour.

6. RECORDING LAWS—IMPROPER RECORD—NOTICE.

Under Comp. Laws 1871, § 4226 _et seq._, providing that deeds and mortgages offered for record should be entered and recorded, each in the appropriate book, and properly indexed, and declaring that every conveyance not so recorded should be void as against a subsequent good-faith purchaser, an instrument relied on as a mortgage, but recorded in a book containing miscellaneous records (for which no provision was made under such statute), and indexed as a deed, was not within the rule as to constructive notice.

Appeal from St. Joseph; Yaple, J. Submitted January 26, 1898. Decided July 18, 1898.

Bill by Alexander Gordon against the Constantine Hydraulic Company, John W. Lamb, and others, to foreclose a mortgage. The defendant company filed an answer in the nature of a cross-bill, praying that a lease executed by it, held by defendant Lamb and others, be decreed to be a mortgage and a prior lien.

From a decree granting the prayer of the cross-bill, complainant appeals. Modified and affirmed.

*Boudeman & Adams*, for complainant.

*F. W. Knowlen* ( *W. G. Howard*, of counsel ), for defendant company.

MOORE, J.    A reference to the case of *Lamb* v. *Constantine Hydraulic Co.*, 59 Mich. 597, will aid in an understanding of the questions involved in this case. Complainant has filed his bill to foreclose a mortgage upon the mill property mentioned in the case just referred to, and to have it declared a first lien upon said property. Defendant company has filed an answer to this bill in the nature of a cross-bill, in which it claims the lease referred to in that case is a mortgage, that there are several thousand dollars due upon it, and asking to have the amount due decreed to be a first lien.    The circuit judge found a decree substantially as prayed in the cross-bill, from which decree complainant appeals.

That portion of the lease which it is claimed constitutes it a mortgage reads as follows:

"This indenture further witnesseth that the said Jonathan Lantz and Sarah S. Foreman hereby sell and convey to the said Constantine Hydraulic Company, and to their heirs and assigns, forever, the said lot as aforesaid, with the appurtenances; provided, that if the said Foreman and Lantz, their heirs, executors, administrators, or assigns, shall from time to time, and at all times, well and truly fulfill and keep the covenants and stipulations herein specified on their part to be fulfilled and kept, and shall pay the rents as aforesaid as they may become due, according to the terms and conditions of this agreement, then the grant and conveyance by them of the aforesaid lot of land and premises shall be void and of no effect; otherwise, in full force."

On the back of the lease was the following indorsement:

"LEASE OF WATER POWER.
"CONSTANTINE HYDRAULIC COMPANY
"TO
"SARAH S. FOREMAN AND JONATHAN LANTZ.

"REGISTER'S OFFICE, ⎱ ss.
  St. Joseph County. ⎰

"Rec'd for record May 24, 1877, at 11 o'clock a. m., and recorded in volume 57 of Deeds, on pages 632, 633, 634, and 635.

"THOMAS G. GREENE, Register."

This paper was left with the register of deeds for record, and was recorded in a book containing miscellaneous records. It was labeled on the back, "Liber 57 of Deeds." No other record of the paper was made.

Mr. Gordon testified that, prior to making the loan, he visited Constantine and the mill property, and saw from whence the water supply for the mill came, and was told by Mr. Lamb it was furnished by defendant company, and was told something of the terms of payment. He testifies he was not informed the lease was in writing, and did not know its terms. He was told the money furnished by him would be used to take up another mortgage, and that his mortgage would be the only one. He did not cause any search of the records to be made.

The circuit judge found that, from what Mr. Gordon said and was told about the lease, he must be deemed to have had actual notice of it, and that, whether he had actual notice of its contents or not, he had sufficient notice of the existence of the lease so that it became his duty to learn its purport and effect. On the other hand, it is said that, while Mr. Gordon might have known the mill owners were renting water from defendant company, he would certainly not infer from that fact that a lien had been put upon the property. In deciding the inference to be drawn, we must look at the situation of the parties. Here was a large flouring mill, the sole motive power of which was water furnished by defendant company. To make the property useful and valuable, the water supply must be

continuous, and not of a temporary character. Mr. Gordon must have known this. He was informed in a general way that there was an arrangement existing between the mill owners and the defendant company. This contract related to a matter that would affect the value of the property. The right to have a water supply to the mill was an appurtenance to the mill. If furnished upon reasonable terms, it would add value to the mill. If it could be cut off, it would greatly impair its value. It could not be said that the mill owners could have the right to water without incurring some obligations upon their part. He was told sufficient so he must have known contract relations existed between these parties which affected the value of the property. It was his duty, when he learned there was a contract of this nature, to learn its terms. He could not assume he was truthfully informed about it, or that it was a contract which would not affect him as a mortgagee, about to take a lien on the property. "A notice of a lease is notice of all the covenants and provisions contained in it." 1 Jones, Mortg. (5th Ed.) § 573; *Taylor* v. *Stibbert*, 2 Ves. Jr. 437; *Doyle* v. *Teas*, 4 Scam. 202; *Babcock* v. *Lisk*, 57 Ill. 327.

The decree rendered in the court below was:

"That there now remains due and unpaid upon said lease, to the said Constantine Hydraulic Company, for water rentals, including interest thereon, the sum of $7,393.75, the same being ascertained and computed by the court as follows: Rental from March 1, 1885, to March 1, 1886, on 50 horse power of water at $5 per horse, with interest at 6 per cent. upon semi-annual installments therefrom, respectively, July 1, 1885, and January 1, 1886; also rental for 50 horse power at $10 per horse per annum, from March 1, 1886, to July 1, 1897, payable semi-annually on July 1st and January 1st of each year respectively, together with 6 per cent. simple interest from the respective times for payment aforesaid of each of such installments."

It is claimed on the part of the complainant that the mill owners should have been required to pay only upon

the basis of $5 a horse power, and that successive tenders had been made of those amounts, so as to discharge the lien entirely. The record does disclose that tenders were from time to time made by the mill owners upon the basis of $5 a horse power, and those tenders were accompanied by a demand for a receipt in full. The defendant company offered to accept these payments, and give a receipt for the amount paid, to apply on the amount due, and claimed the amount should be fixed by computing the rate at $10 a horse power. It was its claim that it had contracts with Mr. Dodge and others, under which they rented power, and paid at the rate of $10. In *Lamb* v. *Constantine Hydraulic Co.*, 59 Mich. 597, in construing this lease, it was held:

"The lessee, moreover, is in no wise responsible for the want of a definite rule to measure the rental on the first of March, 1884. That rule must, of necessity, have depended upon the acts of the company after the agreement was entered into; and I think the agreement must remain as it is until a rule shall be established by the rental, in good faith, to other parties, at terms different from that fixed in the lease for the first seven years. By the plain terms of the lease, the rental, after March 1, 1884, is subject to be fixed and to fluctuate annually according to the rental paid and asked by other parties. Until other parties do rent at a different rate per annum than $5 a horse power, the rental will remain as fixed by the parties in the agreement."

The record discloses that contracts were in existence from March 1, 1886, with other parties, who agreed to pay and did pay at the rate of $10 a horse power. It is urged that these persons were actually using more power than their contracts called for, and therefore the rate was not so high as $10. The record shows the contracts called for payment at the rate of $10, and that defendant company insisted upon payment at that rate; and under the construction given this lease by the court, to which attention has been called, we think defendant company was entitled to have the computation as it was made, unless its subsequent acts should bring about a different result.

It is claimed by the appellant that Charles H. Barry, as president of the Hydraulic Company, made a settlement with Lamb & Co., by which he agreed that the rent should be $5 per horse power, and he offers as evidence receipts given by Mr. Barry, as follows: .

"Received of Lamb & Co. $125, for six months' water rent, from July 1, 1893, to January 1, 1894.
[Signed]    "CHARLES H. BARRY, President."

"Received of Lamb & Co. $125, for six months' water rent from January 1, 1893, to July 1, 1893, with the understanding that the accrued rent from March 1, 1885, to January 1, 1893, is to be $5 per horse power, as per their lease.
[Signed]   ."CHARLES H. BARRY, President."

It is claimed by defendant that Mr. Barry had no authority to make any settlement upon the basis of $5 a horse power, and that, while some of the directors would have been willing to settle upon that basis if the money were paid at the time the settlement was made, they would have been unwilling to make such a settlement and let the amount stand unpaid. The only evidence of any action taken by the board of directors in relation to what was done by Mr. Barry, as shown by their record, was taken June 11, 1895, when a motion was made and carried that the compromise made between Charles H. Barry and Lamb & Co., whereby Charles H. Barry receipted in full to Lamb & Co., for six months' rent due said Hydraulic Company, stand approved by said board of directors. Motion was made and carried that the resolutions as they stand in the minutes of the previous meeting in relation to the collection of the money due the Constantine Hydraulic Company from Proctor and Lamb & Co. remain in force, and that the same be duly prosecuted at law or compromised, as the directors may desire. At a meeting held December 18, 1893, which was the previous meeting shown by the record, a resolution was passed which, so far as it relates to Lamb & Co., is as follows:

"*Whereas*, Lamb & Co. are in arrears for rent for

a large amount, and do not make any proposition in settling the same;

"*Whereas*, the Hydraulic Company holds a first lien on the mill and lands of Lamb & Co. as security for the same:

"*Resolved*, that unless Lamb & Co. do make some satisfactory arrangement for the payment of such rent on or before the 30th day of January, 1894, that proceedings be immediately thereafter commenced for the collection of the same."

We do not think it can be said this action authorized a settlement of the claim for the entire time upon the basis of $5 per horse power.

It is not clear that, in the computation made by the learned judge, the proper credit is given for the amounts receipted for, and that he has not charged the mill owners at the rate of $10 a horse power for the time covered by the receipt. This can be ascertained by a computation, and, if the deduction was not made, the decree will be modified in that respect.

The learned judge found that the rental from March 1, 1885, to March 1, 1886, should be at the rate of $5 per horse power. The record discloses that a tender of $215.96 was made for rental from March 1, 1885, to January 1, 1886, which tender was refused upon the ground that it was only half enough. Inasmuch as, under the finding of the court, the amount tendered was sufficient to cover the amount due, we think the effect of this tender was to discharge the lien to that amount; and this amount, with interest at 6 per cent., should have been deducted from the amount of the decree, and the decree should be modified in that respect.

The record discloses (as will appear also by a reference to the case in 59 Mich.) that the defendant company shut off the water, and that, after the mill owners had repaired the race, they were deprived of water for a period of 43 days; and it is claimed this resulted in damages to the mill owners of $3,065, which should be set off against the amount claimed to be due. The defendant company

asserts this claim is unliquidated; that it concerns nobody
but the mill owners; and that, as they have taken no ap-
peal, the decree must stand.   The record discloses what
was conceded on the argument,—that the property is not
sufficient to pay the amounts due on both these claims.
Whatever amount is included in the decree in favor of de-
fendant company will diminish the amount received by
complainant to that extent, so that whatever would prop-
erly be a set-off between the mill owners and the defend-
ant company should inure to the advantage of complain-
ant.·  There is some difficulty in deciding just what the
set-off should be.   We are not satisfied from the evidence
it ought to be $3,065, for the witness Lamb has not given
sufficient data to allow us to say the amount fixed by him
was properly reached.   We have no difficulty in saying
it is not equitable for the defendant company to refuse to
furnish water, and at the same time to be charging for it
as though it was furnished.   The defendant company
should not have been allowed any rental for the 43 days it
did not furnish water, and that amount should be deduct-
ed, with interest.   It does appear that at the beginning
of the 43 days the mill owners had 3,000 bushels of wheat
on hand; that, during the time the defendant company .
refused to furnish water, it dropped in price 25 cents a
bushel.   The mill owners had contracts for all the flour
they could make out of all their wheat, and they testify
they could have saved this loss if they could have had the
water turned on.   This testimony is not contradicted.
It was a loss for which the defendant company was respon-
sible, and we think it equitable it should account for it.
This would amount to $750, upon which interest should
be computed from September 15, 1884, the time when this
loss occurred.

   In relation to the question whether the record of the
lease was sufficient to put Mr. Gordon upon inquiry, it is
claimed, when a paper is left with the proper recording
officer, the person leaving it has done his duty, and that
it cannot affect the rights of the mortgagee if the record-

ing officer fails to properly record.   There are very respectable authorities sustaining that position, but ' we think it is not sustained by the weight of authority. When this paper was recorded, the Compiled Laws of 1871 were in force.   Section 4226 provides for the keeping by the register of an entry book for deeds and an entry book for mortgages.   It did not provide, as now, for any entry book of miscellaneous records.   Section 4227 provides that the register shall enter in the entry book of deeds "all deeds of conveyance absolute in their terms, and not intended as mortgages," and in the entry book of mortgages he shall enter "all mortgages and other deeds intended as securities," etc.   Section 4228 provides that different sets of books shall be provided by the register of deeds for the recording of deeds and mortgages, in one of which sets all deeds required by the preceding section to be entered in the entry book of deeds shall be recorded at full length, etc., and in the other all such instruments as are required to be entered in the entry book of mortgages shall in like manner be recorded.   Section 4230 provides that the register of deeds shall keep a proper general index to each of the sets of books, in which he shall enter alphabetically the name of every party to each and every instrument recorded by him, with a reference to the book and page where the same is recorded.   Section 4231 provides that every conveyance of real estate within this State which shall not be recorded as provided in this chapter shall be void as against every subsequent purchaser in good faith, and for a valuable consideration, of the same real estate, etc., whose conveyance shall be first duly recorded.   Sections 4236 and 4237 make the terms "purchaser" and "conveyance" embrace a "mortgagee" and a "mortgage."   The language used seems to be plain that a paper intended as a mortgage should be recorded as a mortgage.   If one is to get the benefit of the constructive notice growing out of the recording act, he must comply with its terms.   See *Thompson* v. *Mack*, Har. (Mich.) 150.   Wade on the Law of Notice states the rule as follows:

"*Section 186:* INSTRUMENTS SHOULD BE FILED FOR RECORD IN THEIR TRUE CHARACTER. Another important requirement in regard to the registry of instruments, in order that they may operate as constructive notice, is that they should be registered in their true characters. Otherwise, they may fail to give notice, not only of the estate or interest they are intended to affect, but of that which they on their face purport to convey. As where an instrument is drawn and executed in the form of an absolute deed, which is intended only to take effect as a mortgage, it should be registered as a mortgage, and not as an absolute deed. The reason of this is that, the instrument not being an absolute conveyance of the property, its registry as such cannot charge any one with notice of its contents. It being in reality a mortgage, it should be recorded where the searcher for mortgages would be most likely to find it,—in the record of mortgages.

"*Section 187:* DEED WITH DEFEASANCE IS MORTGAGE. So, where there was a written defeasance to an absolute deed, and the deed was recorded among the absolute deeds, but the defeasance was unrecorded, the two instruments were treated as one, and that one a mortgage, which, not being properly recorded, through the negligence of the parties interested, was postponed to the lien of a subsequent judgment.

"*Section 188:* DEFEASANCE MUST BE RECORDED AS MORTGAGE. So, also, where a separate defeasance was recorded, but in the same book with the deed instead of in the record of mortgages, it was held not to amount to constructive notice to a creditor, for the reason that it would not lie in his way if examining the record for mortgages."

An examination of the index of mortgages would have given no clue to this paper, which is now claimed to be a mortgage, and which must be so regarded if the Constantine Hydraulic Company is to have any standing in court. I do not think it can be said Mr. Gordon must be deemed to have constructive notice because of the record of the lease.

This decree should be modified as indicated, and affirmed. Complainant should have costs of this court.

The other Justices concurred.