# APRIL TERM, 1916.

## EAMES v. BARBER.

1. USURY—RENT—LANDLORD AND TENANT—LEASE—INTEREST—DIS-
TINCTIONS.

> Under Consolidated Laws New York (1909), Vol. 2, § 370
> *et seq.*, the rate of interest is limited to 6 per cent. By
> statutes of Texas interest is defined as the compensation
> allowed by law or fixed by the parties to a contract for the
> use or forbearance or detention of money. Interest rates in
> Texas are limited to 10 per cent., in New York to 6 per cent.
> In a suit to recover an installment of rent on a lease of
> certain real estate located in Texas, brought in Michigan by
> the lessors, who were residents of New York, providing for
> the payment by lessees of twenty per.cent. of the amount
> invested in the Texas property, and a 10 per cent. fee for
> services in clearing the land and preparing for the first
> crop by lessors to be paid at Buffalo, N. Y., in semi-annual
> installments, where no proofs tending to show any intent
> to evade the statute were offered, *held*, that the rental was
> recoverable as such and no usurious conditions had been
> shown. Cf. 2 Comp. Laws 1915, § 5998.

2. SAME—INTEREST.

> Interest is a charge for the loan or forbearance of money.
> In order to bring a contract within the theory of the
> statute, the use of money, or a debt, must be the basis of
> the transaction.

3. APPEAL AND ERROR—HARMLESS ERROR.

> A correct result reached by the trial court will be affirmed
> on error, even if a wrong reason therefor be given.

4. FRAUDS, STATUTE OF—SUFFICIENCY OF WRITING.

> In a lease for more than one year, in which the rental was
> fixed at twenty per.cent. of the amount invested, which
> was made certain by other provisions, and though no
> amount was named the terms were not left in uncertainty,
> no further or more explicit provisions as to rental were
> demanded to bring it within the requirements of the stat-
> ute of frauds.

---

\* Continued from Vol. 191.

Error to Berrien; Bridgman, J. Submitted April 12, 1916. (Docket No. 111.) Decided June 1, 1916.

Assumpsit by Milo D. Eames and another against Herbert O. Barber and others for the recovery of an installment of rent. Judgment for defendants on a verdict directed by the court. Plaintiffs bring error. Reversed.

*Gore & Harvey* (*Joseph H. Morey*, of counsel, for appellants.

*Coolidge & White* (*C. C. Flansburg*, of counsel), for appellees.

Plaintiffs sued to recover an installment of rent reserved in a certain indenture of lease, declaring specially. With a plea of the general issue defendants gave notice that upon the trial they would maintain that the said indenture on its face authorizes the taking by plaintiffs of "a greater sum or value for the use, loan, detention, or forbearance of money than is allowed by the law of the State of New York," where the agreement was to be performed, and where the indenture was executed, and that under the laws of the State of Texas, where the writing was executed and where the land described therein is situated—

"whenever a contract authorizes on its face the taking and receipting of a greater sum or value for the use, loan, detention, or forbearance of money than 10 per cent. per annum the interest authorized by such contract becomes forfeitable, and the plaintiff who brings action upon such contract can recover no interest by reason of usury; that the said writing on its face authorizes the reservation of 20 per cent. per annum for the use, loan, forbearance, or detention of money, and the defendants claim that no recovery can be had upon the said writing by virtue of the said law of the State of Texas.

"The defendants will further snow and insist that the 20 per cent. to be paid annually by the defendants to the plaintiffs upon certain sums of money mentioned in said writing is of the nature of interest on sums of money advanced or to be advanced by plaintiffs for the use of the defendants and intended by the parties to said writing as interest, and that by the laws of both the States of Texas and New York said contract in said writing contained is usurious, and that under the laws of both the States of Texas and New York no recovery can be had upon said writing by the plaintiffs against the defendants by reason of the usurious interest authorized by said writing."

Notice is given, too, of the claim that the writing was procured by fraudulent representations and promises of plaintiffs. Upon the trial counsel for both parties moved the court for a peremptory verdict; the grounds of defendants' motion being:

*First*, that the lease was a contract required to be in writing, and it does not satisfy the statute of frauds.

*Second*, that the contract (lease) is a usurious contract, and therefore wholly void, and, in consequence, the demand sued upon is a usurious demand.

The court charged the jury to return a verdict for the defendants; the sole ground for the ruling being that under the laws of either New York or Texas the contract was usurious. Such a verdict was returned and upon it a judgment for defendants was rendered.

In this court the first ground asserted in moving for a directed verdict is again asserted by defendants as ground for sustaining the judgment; the proposition being:

"That the contract declared upon is void as a lease or as an agreement for a lease under the statute of frauds, because it does not express the substantial terms required in such an instrument nor the rental prices to be paid with such certainty that they can be understood without resort to parol evidence."

The indenture referred to reads as follows:

"This indenture made this 6th day of May, 1909, between Milo D. Eames and Edward A. Eames, both of the city of Buffalo, county of Erie, and State of New York, parties of the first part (hereinafter called the lessors), and H. O. Barber and E. E. Barber, of Lincoln, Lancaster county, Nebraska, Charles E. Barber and H. K. Barber, of San Benito, county of Cameron, State of Texas, copartners, doing business under the firm name and style of 'H. O. Barber & Sons,' parties of the second part (hereinafter called the lessees), witnesseth:. That the said lessors, for and in consideration of the rents, covenants, and agreements hereinafter contained on the part of the said lessees, their executors and administrators, to be paid and performed, have granted, demised, and let, and do by these presents grant, demise, and let, unto the said lessees, their executors and administrators, and the said lessees have agreed to, and do by these presents hereby take, all that tract or parcel of land situated in the county of Cameron, State of Texas, particularly known and described as block No. one hundred twenty (120) of the subdivision of the lands of the San Benito Land & Water Company as delineated upon and shown by a map marked 'Map of Lands of San Benito Land & Water Company in Concepcion de Carracitos Subdivided for Said Company by Sam A. Robertson, Civil Engineer,' said map being dated March 31, 1908, and being of record in the office of the county clerk of Cameron county, Texas.

"To have and to hold the above-described premises, together with the appurtenances unto the said lessees, their executors and administrators, for the term of ten (10) years, to commence on the 1st day of January, 1910, and to end on the 1st day of January, 1920.

"And the said lessees, parties of the second part, agree to pay to the said lessors, parties of the first part, yearly rent therefor in the amount each year of twenty (20) per cent. of the entire investment of the said lessors in said leased premises; the said investment being as follows:

"(1) Purchase price of the said premises $10,400.

"(2) Total of all other moneys heretofore furnished or which may hereafter be furnished by the lessors

to the lessees at their request for other purposes, including the clearing of the land, preparation for, and planting of the first crop.

"(3) Ten per cent. fee for services in clearing, preparing for, and planting first crop as hereinafter provided.

"The total of the above-mentioned items shall constitute the investment of the lessors in said property upon which the aforesaid rental of 20 per cent. shall be computed.

"The said yearly rent in the amount of twenty (20) per cent. of the lessors' said investment shall be paid in cash to the lessors at their office in the city of Buffalo, county of Erie, and State of New York, in two equal payments each year, one-half on the 1st day of January, and one-half on the 1st day of March in the year 1911, and one-half on the 1st day of January, and one-half on the 1st day of March in each and every year thereafter, to and including the year 1920; the rental for each year of said term being payable on the first days of January and March of the year following.

"And it is expressly agreed that the lessees shall promptly clear the said land and prepare the same for and plant the first crop of sugar cane thereon prior to the beginning of said term, and that the lessors shall bear and defray the actual cost thereof, and furnish to the said lessees from time to time, as may be necessary, sufficient sums of money therefor, and in addition thereto shall pay to the said lessees upon the completion of said work a fee of ten (10) per cent. of the said cost of clearing, preparing for, and planting the first crop for their services in connection with the purchase of said land, and the management of the operations of clearing, *et cetera,* in this paragraph mentioned: Provided, however, that the total cost to said lessors for clearing, preparing for, and planting the first crop of sugar cane on said premises with water on the land in completed ditches, including said ten (10) per cent. fee, shall not exceed approximately fifty dollars ($50.00) per acre.

"And the said lessees hereby especially covenant and agree that they shall and will pay for all necessary water for irrigation and other purposes, and shall fur-

nish at their own cost and expense all tools, appliances, materials, labor, and repairs incident to or necessary for the proper cultivation of said premises and the maintenance thereof, and shall comply with all lawful regulations, and shall pay all lawful charges of the San Benito Land & Water Company with respect to the said leased premises.

"And the said lessees further expressly covenant and agree that they will use, care for, and cultivate the said premises in a lawful, careful, and proper manner, and maintain in good condition said premises and the irrigation ditches to be constructed thereon, and shall not allow the accumulation of rubbish thereon, and shall prevent the establishment of noxious weeds or growths thereon.

"And it is further expressly covenanted and agreed that the said lessees shall not let, sell, underlet, or assign over the said premises, or any part thereof, for the whole or any part of said term.

"It is mutually covenanted and agreed that the said lessees shall have the right to remain in possession of the said premises for two months after the expiration of said term, to wit, until the 1st day of March, 1920, for the purpose only of removing therefrom the crops growing at the expiration of the term. And the said lessees expressly covenant and agree that on the 1st day of March, 1920, they will surrender unto the said lessors the said premises in good condition and in such condition that the marketable crop of sugar cane harvested thereon in the year 1919 shall weigh not less than ninety (90) per cent. of the weight of the marketable sugar cane harvested as the first crop, and shall then deliver to the said lessors the peaceable possession thereof.

"And it is expressly covenanted and agreed that this lease is made subject to a right of way over the said premises for a drainage ditch conveyed to Sam A. Robertson, trustee, by deed or contract made by George A. Fearnow and others, dated March 5, 1908, and recorded on pages 3 to 7 of Book Supplemental J of Cameron County Records, and to all the provisions of said lease or contract, all of the terms and conditions of which deed or contract the said lessees hereby covenant and agree to fulfill and perform.

"And it is further expressly covenanted and agreed by and between the parties hereto that, if default be made in the due payment of the rent, or any part thereof, or if the said lessees shall violate any other covenant or agreement contained in this lease, then and in either case the said lessors shall have the right at their election to terminate this lease, and to re-enter upon the said premises upon first giving thirty (30) days' notice of such election by serving the same personally upon the said lessees, or by posting the same in some conspicuous place upon the said premises.

"In witness whereof the parties hereto have hereunto set their hands and seals the day and year first above written.

> "EDW. A. EAMES.       [Seal.]
> "MILO D. EAMES.       [Seal.]
> "H. O. BARBER.        [Seal.]
> "E. E. BARBER.        [Seal.]
> "CHAS. E. BARBER.     [Seal.]
> "H. K. BARBER.        [Seal.]"

As to plaintiffs it was acknowledged in Erie county, N. Y., as to Charles E. and H. K. Barber it was acknowledged in Cameron county, Tex., and as to H. O. and E. E. Barber in Lancaster county, Neb.; notarial certificates to this effect being indorsed upon or appended to the indenture. For four years the defendants paid the rent at the rate of $3,370 each year. The principal sum upon which the rent was computed was agreed to, and is shown by a letter written by defendants and received in evidence without objection, reading:

"On the stationery of H. O. Barber & Sons, real estate owners and operators of the Barber plantation, San Benito, Texas. In the left-hand corner are the names 'H. O. Barber, E. E. Barber, Lincoln, Nebraska.' In the upper right-hand corner are the names 'C. E. Barber, H. K. Barber, San Benito. Texas.' The other printed matter on the letter head is: 'Buy irrigated lands in the lower valley of the Rio Grande.'

" 'SAN BENITO, TEXAS, February 10, 1911.
" 'MR. EDWARD A. EAMES,
   " 'Buffalo, New York.
" '*Dear Sir:*

   " 'I inclose herewith statement of your account, or, rather, investment, as our records show it. As stated in my letter to you, this shows the permanent investment to be $16,852. As regards the $48 taxes, this was for year 1909, due November 1st that year, and became delinquent February 1, 1910. Owing to failure to publish notice far enough in advance, the penalty did not apply. You had no rent due until January 1, 1911, so that we could not pay the 1909 taxes from this. You wrote asking me to pay these taxes! Think this may give you a clearer understanding of the whole transaction. I send $10 to pay interest for the delay in remitting. I believe we are entitled to an extra credit instead of owing you a balance of $1.56 on interest.

" 'Yours truly,
" 'CHARLES E. BARBER.'

   " 'Statement. San Benito, Texas, February 9, 1911. Messrs. Eames Bros. in Account with H. O. Barber & Sons, Flour and Feed'—the heading of the paper.

" '1909.

| | | |
|---|---|---:|
| April 17. | Draft, credit | $3,700.00 |
| April 23. | Draft, credit | 500.00 |
| May 1. | Draft, credit | 500.00 |
| May 18. | Draft, credit | 500.00 |
| June 30. | Draft, credit | 500.00 |
| July 30. | Draft, credit | 500.00 |
| October 9. | Draft, credit | 500.00 |
| November 6. | Draft, credit | 500.00 |
| November 26. | Draft, credit | 500.00 |
| December 4. | Draft, credit | 500.00 |
| December 11. | Draft, credit | 2,000.00 |
| Outstanding notes | | 6,400.00 |
| Earnest money | | 300.00 |

Debit, 1910.

| | | |
|---|---|---:|
| March 17. | Taxes | 48.00 |
| Balance, credit to the Barber Account | | $16,852.00' " |

Upon cross-examination of plaintiff Edward A. Eames (the only witness called for plaintiffs) there

was offered in evidence by defendants and received over the objection of plaintiffs a memorandum of agreement reading:

"Memorandum of agreement between Milo D. Eames, single, and Edward A. Eames, of Buffalo, N. Y., parties of the first part, and H. O. Barber, E. E. Barber, Chas. E. Barber, and H. K. Barber, copartners, of San Benito, Tex., parties of the second part, witnesseth:

"That in consideration of one dollar interchangeably paid, and in consideration of agreements hereinafter made by parties of the second part, the parties of the first part hereby agree:

"*First.* That said first parties will furnish to said second parties, as may be necessary, sufficient moneys to purchase, clear, break, and plant in cane all of that tract of land known and described as follows: Block No. 102 of the subdivision of the lands of the San Benito Land & Water Company as delineated upon and shown by a map marked 'Map of Lands of San Benito Land & Water Company in Concepcion de Carricitos, Subdivided for Said Company by Sam A. Robertson, Civil Engineer,' said map being dated March 31, 1908, and being of record in the office of the county clerk of Cameron county, Texas.

"*Second.* Said parties of the first part agree to lease to said second parties all of the above-described tract of land for a term of ten years beginning January 1, 1910, and ending January 1, 1920, with possession for removal of crops until March 1, 1920, for a price to be determined in a manner hereinafter described.

"*Third.* Said parties of the first part agree to pay to said second parties 10 per cent. of the cost of clearing, preparation for, and planting of the first crop, as a fee for management of the operations 'described above in this paragraph, and for all services in connection with the purchase of the land as herein described.

"In consideration of the foregoing agreements the parties of the second part hereby agree:

"*First.* To promptly purchase and transfer to parties of the first part all of the land described above and to furnish said first parties a good and sufficient

deed to same, and also an abstract of title satisfactory to first parties.

"*Second.* The parties of the second part agree to lease from said first parties all of the above-described land for the above-mentioned ten years from January 1, 1910, at an annual rental in cash of 20 per cent. of the total investment (to be described below), payable at Buffalo, N. Y., the payment of rental to begin January 1, 1911, and to be payable one-half in cash January 1st, balance in cash March 1st, of each year.

"*Third.* Said second parties agree to turn over to said first parties at the expiration of this lease all of the above-described tract of land in such condition that the marketable cane harvested in 1919 shall weigh not less than 90 per cent. of the weight of the marketable cane harvested as the first crop.

"*Fourth.* Parties of the second part agree to supply all the necessary water for irrigation and other purposes, tools, appliances, materials, labor, and repairs, except as herein specifically provided.

"It is hereby mutually agreed and understood:

"*First.* That the purchase price of the above-mentioned tract of land shall not exceed $65.00 per acre, and that the total additional cost to said first parties shall not exceed approximately $50.00 per acre planted in cane with water on the land in completed ditches.

"*Second.* So far as a basis for determining the annual rental above-mentioned is concerned, 'investment' shall consist of the total outlay required of the parties of the first part under this agreement.

"*Third.* It is understood that the parties of the second part will care for and operate the above-mentioned land in a careful and proper manner, not allowing the accumulation of rubbish thereon and preventing the establishment of noxious weeds or growths thereon.

"*Fourth.* This agreement contemplates payment by said first parties:

"(*a*) For the purchase of the land.

"(*b*) Preparation of the land for and the planting of the first crop.

"(*c*) A fee for services.

"Except for these three items more particularly described above, parties of the first part shall not be expected to make any further payments.

"Signed by second parties subject to their ability to purchase the land at a price satisfactory to said first parties.

"Signed in duplicate this 6th day of March, 1909, at San Benito, Texas.

> "MILO D. EAMES.
> "EDWARD A. EAMES.
> "H. O. BARBER.
> "CHAS. E. BARBER.
> "H. K. BARBER."

There was also introduced (this without objection) a deed made by George A. Fearnow and wife to plaintiffs of the land described in the foregoing indenture, reciting a consideration of $10,400.

Testimony tends to prove that the land described in the deed and lease was, when purchased by plaintiffs, wild, covered with mesquite and cactus, so that it was necessary to grub it, plow it, fence it, make ditches for irrigation, and seed it for sugar cane, in order to make it productive.

The highest rate of interest allowed in Texas is 10 per cent., in New York 6 per cent., per annum. By the laws of Texas all written contracts which provide for a rate of interest greater than 10 per cent. are void as to the interest money. By the laws of New York all usury contracts (there are certain exceptions) are void. As stated in defendants' brief, the contention respecting usury is:

"That portion of the contract [lease] contained in clause No. 2, above quoted, is clearly usurious on its face. The moneys referred to do not constitute any part of the purchase price of the lands nor anything upon which real estate rentals can be based. It relates solely to moneys advanced by the lessors to the lessees for the benefit of the lessees to be paid back in ten equal installments. The amount paid for the purchase price of the lands was $10,400. The total amount of the moneys paid out, including the purchase price of the lands, was $16,852. After deducting the 10 per cent. fee for services and the purchase price, there

would be left the sum of $5,806.80 as the amount of moneys advanced by the lessors to the lessees and for which an indebtedness came into being. This money was to be furnished to the lessees from time to time to enable them to clear the land, plough it, ditch it, and plant the cane for their own benefit. Of this there is no dispute. * * *

"It is claimed by the plaintiffs that no indebtedness arose because the principal sum advanced was never to be paid back. We insist that the principal sum of money advanced by the plaintiffs to the lessees was to be paid back by the terms of the contract together with an exorbitant rate of interest. The repayment of principal with interest was to be paid in 20 semiannual installments, payable the 1st days of January and March in each year. These installments would amount to $580.68 twice each year under the second clause quoted. Allowing the plaintiffs 10 per cent. for the use of this money at each payment of $580.68, one-half of the amount paid would legally apply on the principal and reduce it proportionately.

"By calculation we find that at the end of ten years the lessors, by paying according to the terms of the contract, would have paid to the plaintiffs the principal sum of $5,806.80, together with interest at 15 per cent. and a trifle over. By no process of ingenious reasoning can it be seriously contended that the payment of 20 per cent. per annum or 10 per cent. semiannually upon the moneys advanced by the plaintiffs directly to the lessees, not for the purchase of the lands for the plaintiffs, but for necessities of the lessees in clearing the land for their own use and purchasing material necessary for that purpose, could be regarded as a rental of land. Calling it by that term was a mere scheme to avoid usury laws. It is similar to a transaction which, taking the form of or creating or purchasing an annuity, is on the footing of a loan or borrowing of money, and is put in such form as a device to cover the exaction of illegal interest. Such a transaction is usurious."

I quote further from defendants' brief:

"Although it may be that, where the rental of land is fixed upon a percentage basis, and that percentage ex-

ceeds the lawful rate of interest, the contract might be good and enforceable, still if, in the same contract, there is an agreement to furnish other money at an illegal rate of interest, that portion of the contract taints the whole contract, the entire agreement, and renders it unenforceable. In other words, if there are several considerations for one promise, and one of them is illegal, the whole promise will be unenforceable; it being impossible to tell which one of the many considerations induced the promise."

For plaintiffs, appellants, it is contended:

"(1) That the burden of proof is on the defendants to establish usury.

"(2) That to establish usury there must be a loan of money, or the forbearance of an indebtedness.

"(3) That, where the transaction does not involve the loan of money, or the forbearance of an indebtedness upon its face, to have usury it must be proven that the transaction was a mere device to cover usury, and that the real intention of the parties was to make a loan, or create an indebtedness for the forbearance of which interest is to be paid.

"(4) In such a case that such was the intent of the parties, is material, and must be proved to establish usury.

"(5) That in this case the transaction on its face did not involve a loan of money, nor the forbearance of an indebtedness, and that there is no evidence of any intention on the part of any of the parties to make a loan of money, or for the forbearance of any indebtedness.

"(6) That accordingly the defense of usury fails, and that therefore, the trial court having held with the plaintiffs on every other question in the case but the question of usury, the judgment must be reversed."

OSTRANDER, J. (*after stating the facts*). 1. The statute of the State of Texas defines interest as:

"The compensation allowed by law or fixed by the parties to a contract for the use or forbearance or detention of money." Article 4973, Revised Civil Statutes.

So by the statute of New York:

"The rate of interest upon the loan or forbearance of any money, goods or things in action, except as otherwise provided by law, shall be six dollars upon one hundred dollars, for one year, and at that rate, for a greater or less sum, or for a longer or shorter time."

Consolidated Laws of the State of New York (1909), vol. 2, pp. 1258, 1259, § 370 *et seq.*

So our own statute (2 How. Stat. [2d Ed.], § 2870 [2 Comp. Laws 1915, § 5998]) is:

"No bond, bill, note, contract or assurance, made or given for or upon a consideration or contract, whereby or whereon a greater rate of interest has been, directly or indirectly, reserved, taken or received, than is allowed by law, shall be thereby rendered void; but in any action brought by any person on such usurious contract or assurance, except as is provided in the following section, if it shall appear that a greater rate of interest has been, directly or indirectly, reserved, taken or received, than is allowed by law, the defendant shall not be compelled to pay any interest thereon."

In each State what the statute condemns is taking or receiving directly or indirectly, more than the legal rate of interest. The contract is not avoided; the loss of interest is the penalty.

While a statutory definition of interest may change the definition of usury, there is nothing in the statutes I have referred to which forbids the acceptance of the common idea that interest is a charge for the loan or forbearance of money. See, generally, 39 Cyc. p. 888 *et seq.*; 29 Am. & Eng. Enc. Law (2d Ed.), p. 453.

The lease affords no evidence of a loan by plaintiffs to defendants. Its reasonable, and, unless the imagination is employed, its necessary, interpretation negatives the idea of a loan to defendants. Defendants'

term began after the land had been fitted and seeded. It is immaterial that they, instead of some one else, superintended the fitting and seeding, at the expense of plaintiffs, or that they even performed the necessary labor and furnished the necessary materials. Suppose that a barn on premises was needed, and the owner undertook to erect it before the tenant's term began, permitting the tenant to erect it at the owner's expense, the rent being fixed with reference to the improved premises; in such a case it could not be reasonably contended that the cost of the barn was a loan to the tenant. I can see no difference between the supposed case and the one presented by the terms of the lease. Assuming that the contract which preceded the making of the lease may be resorted to and its terms and those of the lease be considered together, there is then nothing which supports a construction of the lease other than the one indicated. Clearly there is no lawful objection to fixing the rental in terms of a percentage of the total cost of the premises. Defendants, appellees, rely upon *Rosen* v. *Rosen*, 159 Mich. 72 (123 N. W. 559, 134 Am. St. Rep. 712) ; *Fisher* v. *Hoover*, 3 Tex. Civ. App. 81 (21 S. W. 930), and other cases as sustaining the doctrine that usury may exist when there is no actual loan of money. Since defendants assert, and assert only, that there was a loan—an advancement—of money to defendants, the proposition stated is not, if sound, of particular interest. However, one has only to read the opinions in the cases cited to see that in each use of money, a debt, was the foundation of the exaction complained about. It is assumed, each party having moved for a directed verdict, that there was no conflicting oral testimony tending, by inference or otherwise, to prove an intention of the parties other than the one to be found in the terms of the lease. It is asserted in the brief for appellants that there is no such testimony, and defend-

ants' brief refers us to none, tending to prove that the lease was a mere device for exacting usury—unlawful interest. It may be conceded that the plaintiffs desired to make a profitable investment of their money, but they did not lend it to defendants, and no debt was created for the amount invested. The intention to exact usury is not proven.

2. For appellants it is contended that this court should refuse to consider whether the verdict and judgment are in any event right, and should enter a judgment for plaintiffs for the amount of past due rent and interest, plus the amount of unpaid water rental. It is the general rule that an appellate court does not concern itself with errors claimed to have been committed against the appellee. *Hughes* v. *Railway Co.*, 78 Mich. 399 (44 N. W. 396) ; *Bowsher* v. *Railway Co.*, 174 Mich. 339, 345 (140 N. W. 524). But, when an issue determinable as matter of law is determined by the court, and a wrong reason assigned for the ruling, the proper administration of the law does not require a reversal if the ruling is nevertheless right. In *Ehinger* v. *Graham,* 190 Mich. 132 (155 N. W. 747, 750), it was said:

"We think the circuit court reached the correct conclusion (although its reasons stated therefor were insufficient),"

and affirmed the judgment. In *Lentz* v. *Insurance Co.,* 96 Mich. 445 (55 N. W. 993), it appeared that three grounds of defense to an action on a policy of insurance were asserted. Upon one of them the court directed a verdict for defendant. It was said, 96 Mich. 446 (55 N. W. 994):

"If it appears that there is any conclusive reason why no recovery should be had, the judgment should not be disturbed."

A considerable number of similar cases are collected in 1 Mich. Digest, § 854.

In the case at bar the record includes the lease, and the laws of Texas and of New York were proved. It appears to be agreed—at least nothing to the contrary is asserted—that the point is one of law which the court below should and, appellants say, did determine. It is also a question certain to be raised upon a new trial. Therefore, in my opinion, it should be considered.

The contract is for leasing for a longer period than one year. By the laws of New York and of Texas it is required to be in writing. It is in writing. Is there omitted from the writing anything essential to the contract which it attempts to evidence? If not, then it is not necessary to further test it by the laws of either State. The lease was executed in June and in July and August, 1909. It described the investment made and to be made by the lessors, upon the total of which the rental was to be reckoned. The terms of the lease are not uncertain. No element of a lease of lands is omitted. The precise amount of rent reserved is not stated; nor is it in a lease of lands for agricultural purposes where rent in kind from crops to be raised is reserved; nor in leases for a considerable period of time during which an appraisal, or successive appraisals, of the property rented is by agreement to be the basis of the rent charge. See *Rayburn* v. *Lumber Co.,* 57 Mich. 273 (23 N. W. 811) ; *Lamb* v. *Hydraulic Co.,* 59 Mich. 597 (26 N. W. 785) ; *Camp* v. *Moreman,* 84 Ky. 635 (2 S. W. 179) ; *Vindquest* v. *Perky,* 16 Neb. 284 (20 N. W. 301) ; *Atwood* v. *Cobb,* 16 Pick. (Mass.) 227 (26 Am. Dec. 657) ; 2 Page on Contracts, § 704. Beyond this the term began after the expenditures had been made, the amount expended has been agreed to, and for four years the rent *reserved in the lease* was paid.

The court below was in error in ruling that the

contract was usurious, and right in ruling that the lease was not affected by the statute of frauds of either New York or Texas.

We are referred to no testimony which supports a recovery for the unpaid water rentals.

The judgment is reversed, with costs to appellants, and a new trial granted.

STONE, C. J., and KUHN, BIRD, MOORE, STEERE, BROOKE, and PERSON, JJ., concurred.