ELEANOR CHRISTENSEN v. HENNEPIN TRANSPORTATION
COMPANY, INC.[1]

June 18, 1943.

No. 33,339.

[1]Reported in 10 N. W. (2d) 406.

*E. F. Matthews*, for appellant.
*Johnson, Sands & Brumfield*, for respondent.

PETERSON, JUSTICE.

Plaintiff sues to recover damages for personal injuries sustained in a collision between an automobile, driven by her husband, in which she was riding, and a truck (tractor-trailer) owned by defendant, operated by its employe. Plaintiff claimed that defendant's negligence caused the collision. She alleged in the complaint:

That "at that time and place, the Defendant and its agents and servants carelessly, unlawfully and recklessly drove part way across the intersection of Hampden and University Avenues, and then without any warning or signal whatsoever, applied the brakes of its tractor and trailer truck so that it was impossible for the automobile in which Plaintiff was riding to stop, and that the same crashed into the rear end of said tractor and trailer truck." Also that she "was invited to get into the Chevrolet automobile heretofore described by Peter Christensen, co-owner of said automobile, who at said time had the control and custody of said automobile, and she accepted his invitation to ride therein as a guest and passenger."

Defendant denied negligence, alleged that the accident was caused by the husband's contributory negligence, and that his contributory negligence was imputable to the wife.

The collision occurred after dark on the evening of November 5, 1941, at the intersection of University and Hampden avenues in

St. Paul. Both vehicles were proceeding easterly on University avenue, a wide street with double streetcar tracks in the center and with more than one lane on either side for vehicular traffic. There was a *"Stop-and-Go"* sign at the intersection at Hampden avenue.

At a point about 250 feet west of Hampden avenue plaintiff's husband attempted to pass the truck, the left wheels of which were over the southernmost streetcar rail. He sounded his horn as a signal for the truck to move over to the right, but it did not yield. The road being clear of oncoming traffic and clearly visible, the husband started to pass the truck on the left. He was going from 25 to 28 miles and the truck 26 or 27 miles per hour. When he got to a point about even with the front of the truck, a westbound automobile about 300 feet ahead suddenly swung over onto the south side of the street and proceeded in the lane in which plaintiff's husband was driving directly toward him. He then took his foot off the gas pedal and dropped behind the truck. He was at that time about ten feet behind the truck. Just as he got behind the truck it suddenly stopped at Hampden avenue.

The parties gave different versions as to what occurred at the intersection. Plaintiff's version, testified to by her husband, was that he could plainly see the *"Stop-and-Go"* sign on the north side of the street; that the green or *"Go"* signal was on as the front of the truck entered the intersection; that the yellow signal warning that the signal was to be changed to *"Stop"* went on when the front of the truck was halfway across the intersection; that the truck stopped suddenly without giving any warning of intention to do so; and that because of lack of such warning he collided with the rear of the truck before he had an opportunity to apply his brakes. The over-all length of the truck was between 34 and 40 feet. When its front end was near or at the center of the intersection, the rear end extended over the west line of the intersection. Hence the collision occurred west of the intersection line. No other vehicles were in the intersection at the time. Defendant's version, as given by the driver of the truck, was that he stopped at the intersection line when the signal light turned from *"Go"* to yellow without en-

tering the intersection with any part of the truck. No claim was made by defendant that its driver gave any warning of the intended stop.

Plaintiff offered in evidence an ordinance of the city of St. Paul requiring a vehicle such as defendant's truck to be equipped with a lamp or device (§ 98[a]) "so constructed and located on the vehicle as to give an adequate signal of intention to stop." The offer was ruled out because plaintiff's husband was aware of the presence of the truck on the street and because the ordinance was not pleaded. The provisions of the ordinance are similar to those of Minn. St. 1941, § 169.19, subds. 7 and 8 (Mason St. 1940 Supp. §§ 2720-194 and 2720-195), of the highway traffic regulation act.

The husband testified that the car which he was driving was equipped with good brakes and that he could stop it almost instantly at the rate of speed he was then going.

Plaintiff and her husband purchased the car about eight months prior to the collision. Title thereto was registered in plaintiff's name only. Her husband was in the potato business. On the evening in question he decided to go to his place of business after dinner to look after the fire to protect the potatoes from freezing. He testified: "Well, when I got home, we had both just come from work, so I told my wife I had to go down and fix the fire in our place, because we just have a coal fire to keep the potatoes from freezing. So I asked her if she wanted to take a ride down there with me. She said she would; so after she got in the car, I suggested we drop over by her mother's—" Plaintiff's offer to show the facts and circumstances relative to the purchase of the car and the payments of the purchase price were ruled out. The trial court stated in connection with his ruling: "Yes, she is a co-owner and, being a co-owner, she is not a passenger in that car when she is driving with her husband, and any negligence of her husband is negligence to her. That ought to simplify the matter materially." Apparently plaintiff acquiesced in those views. The case was tried upon the theory that they were a correct statement of the law.

The court held that the husband's negligence, if any, was imput-

able to plaintiff and so instructed the jury, which returned a verdict in favor of defendant, with the surplusage (which the court should have directed to be eliminated) "by reason of the fact that both the defendant and plaintiff were negligent." Plaintiff appeals.

On appeal, as below, plaintiff contends that the court erred in excluding the city ordinance and in holding as a matter of law that plaintiff's husband's negligence, if any, was imputable to her. Defendant contends that the rulings were correct and further that it was not negligent and that the husband's negligence appears as a matter of law.

■ Where traffic is regulated by a *"Stop-and-Go"* traffic control device as required by Minn. St. 1941, § 169.06, subd. 5 (Mason St. 1940 Supp. § 2720-164), it is the duty of the driver of a motor vehicle to be on the lookout for, to discover, and to obey implicitly traffic control signals. By the use of a traffic control device, public authority undertakes to give all signals for the movement of traffic, thereby dispensing with signals by drivers, which, absent such regulation, they otherwise are required by statute to give. Consequently, where a driver stops at the intersection line pursuant to a *"Stop"* signal, he is not required to give any signal before he stops, although a stop signal might otherwise be required of him by statute. Turnbloom v. Crichton, 189 Minn. 588, 250 N. W. 570. In effect, the court below so instructed the jury. If defendant's version that, in obedience to the *"Stop"* signal, it stopped its truck at the intersection line were true, it was not guilty of negligence for failing to give some other signal of its intention to stop. The jury was not bound to adopt defendant's version. By finding defendant negligent, it is plain that the jury rejected defendant's version of the facts. The conflicting evidence made the question one of fact for the jury. Fredhom v. Smith, 193 Minn. 569, 259 N. W. 80. Where a vehicle is within the intersection when the yellow light shows, it may be driven *cautiously* through the intersection. *Id.* § 169.06, subd. 5(b)(1), (§ 2720-164[b]1). Plaintiff claims that defendant's truck was within the intersection when the yellow sign went on. In that situation, defendant's driver was required to exercise due

care with respect to other traffic. Having exercised its right to enter the intersection when the *"Go"* signal was on, defendant could not abandon it without regard to the rights of others. The fact that the forward driver has entered an intersection may lead a driver to the rear to believe, and thus rely on the fact, that he intends to proceed across it. Entering and stopping therein causes the rear driver to be misled. Stopping in an intersection after exercising the right to proceed without giving proper signal of intention to stop is negligence as to other vehicles. Sebern v. Northwest Cities Gas Co. 167 Wash. 600, 10 P. (2d) 210. In Hladick v. Williams, 292 Mass. 470, 198 N. E. 662, the Massachusetts court applied the rule controlling here. There, as here, the evidence, while conflicting, warranted the court (the trial was without a jury) in finding that the defendant, whose automobile was partly within the intersection, stopped in obedience to the *"Stop"* sign without giving a stop signal to warn the car in which plaintiffs were riding and which was immediately behind defendant's of his intention so to do. The court held that the question of defendant's negligence was one of fact and sustained findings in favor of the passengers who were riding in the car to the rear. The court said that the evidence sustained a finding (292 Mass. 472, 198 N. E. 663) "that when the light turned red defendant's automobile was partly over the line of intersection and came to a sudden stop without any signal being given by the defendant, by putting out his hand or otherwise, that he intended to stop; * * * and that the defendant was negligent."

■ Before stopping, the driver of a motor vehicle is required to give an appropriate signal as required by statute to the driver of any vehicle *immediately* to the rear, unless there is good and sufficient reason for not being able to do so. *Id.* § 169.19, subd. 6 (§ 2720-193[c]). Here defendant's claim is not that it was unable to give a signal, but that it was not required to do so. It is negligence for a motorist who knows or by the exercise of ordinary care should know that another is following closely behind to fail to warn the driver of the rear car by appropriate signal of his inten-

tion. Martini v. Johnson, 204 Minn. 556, 284 N. W. 433; Peterson v. Doll, 184 Minn. 213, 238 N. W. 324; Simpson v. Snellenburg, 96 N. J. L. 518, 115 A. 403, 24 A. L. R. 503; Mansur v. Josephson, 333 Pa. 467, 5 A. (2d) 102; Keller v. Keystone Furniture Co. 132 Pa. Sup. 547, 1 A. (2d) 562.

■ Failure to equip a motor vehicle with a device constructed and located so as to give an adequate signal of intention to stop, as required by ordinance, is evidence of negligence. Such provisions impose cumulative duties on drivers. Donahue v. Mazzoli, 27 Cal. App. (2d) 102, 80 P. (2d) 743. The theory underlying the ordinance is that the knowledge of the driver of a car to the rear of the presence on the highway of a car forward is not in itself adequate to enable him to guard against a rear-end collision if the forward car should stop suddenly without warning, and that a warning would enable the car in the rear to guard against the stop by bringing his car to a stop with the forward one. The failure to give a signal of intention to stop, when required, in effect deprives the rear driver of opportunity to avoid, or at least exposes him to danger of, a rear-end collision. Simpson v. Snellenburg, 96 N. J. L. 518, 115 A. 403, 24 A. L. R. 503, *supra,* annotation at p. 508; *Cf.* Smith v. Carlson, 209 Minn. 268, 296 N. W. 132; Carlson v. Peterson, 205 Minn. 20, 284 N. W. 847.

■ It was not necessary to plead the ordinance. An ordinance prescribing standards of conduct, being an evidentiary fact in a negligence case, may be proved, like any other fact tending to prove or disprove negligence as an ultimate fact. Larson v. Lowden, 204 Minn. 80, 282 N. W. 669.

■ Whether plaintiff's husband was guilty of contributory negligence was a fact question. The trial court properly submitted the question under the emergency rule. Emergency is an important factor in determining negligence and contributory negligence. The choice of action by the driver of an automobile confronted by a sudden peril through no fault of his own is not to be tested by inquiry whether it was the best or most effective under the circumstances, but rather by comparison with what reasonably might be

expected of the average prudent driver under similar circumstances. Merritt v. Stuve, 215 Minn. 44, 9 N. W. (2d) 329; Smith v. Carlson, 209 Minn. 268, 296 N. W. 132, *supra;* Dahlstrom v. Hurtig, 209 Minn. 72, 295 N. W. 508. The emergency rule has been applied in cases similar to the instant one. Cook P. & V. Co. v. Hickling (8 Cir.) 76 F. (2d) 718. The emergency here was created in part by the oncoming car being in the same lane as the car driven by plaintiff's husband and in part by defendant's driver playing the role of a road hog by refusing to yield so as to allow the husband to pass without getting over onto the car tracks. He had no time to do more than avoid the oncoming motorist. He testified that defendant's truck stopped "just" as he "came over off the car tracks behind the truck."

■ It is plain that there must be a new trial because of the errors already adverted to. There remains for disposition the question whether the husband's contributory negligence, if any, is imputable to the wife. Ordinarily, because of her acquiescence in the rulings below that her husband's negligence, if any, was imputable to her, we would refuse to pass on her contention that the rulings were erroneous. But this case does not come within the rule generally applicable. The pleadings squarely raise the question, and the question has been argued on the appeal. It is certain to arise on a retrial. If plaintiff's contention is correct and if the trial court should on retrial adhere to the rulings complained of, it is certain for reasons to be presently stated that such error would be injected into the proceedings as to require another reversal if another appeal should be taken. Sound judicial administration requires that not only unnecessary trials and appeals be avoided, but that cases be tried under correct rules of law. To that end, where a new trial is ordered, the appellate court will consider questions not technically before it which will arise on a new trial, especially where they may be decisive. Eames v. Barber, 192 Mich. 1, 158 N. W. 218; E. P. Wilbur Trust Co. v. Eberts, 337 Pa. 161, 10 A. (2d) 397. *Cf.* West Chicago Masonic Assn. v. Cohn, 192 Ill. 210, 61 N. E. 439, 55 L. R. A. 235, 85 A. S. R. 327.

■ The husband's negligence, if any, was not imputable to plaintiff as a matter of law, as the court below held. Defendant contends that his negligence was imputable to her as a matter of law both under the rules of the common law, because of her presence in the car while her husband was driving it, and under the provisions of the safety responsibility act, because of her consent, either as owner or co-owner, as the case might be, to her husband's driving.

(a) Apart from statute, imputation of a third party's negligence to plaintiff is based upon the plaintiff's right to control the conduct of the party claimed to be negligent. Koplitz v. St. Paul, 86 Minn. 373, 90 N. W. 794, 58 L. R. A. 74. Right of control depends upon the relationship between the parties. In the particular case the inquiry should determine the relationship and whether it was one which gave plaintiff control of the conduct of the person whose negligence was claimed to be imputable to him. See 3 Cooley, Torts (4 ed.) p. 437, § 492.

In the instant case, plaintiff and her husband apparently were co-owners of the automobile in question. They were regarded as such throughout the case. The husband apparently was in possession of the car and exercising dominion over it, for he invited his wife to ride with him the same as one in possession might invite a person bearing him no relationship. At least, the inference was permissible that he was in possession and had control at the time.

Ownership of an automobile in which the owner is riding, but which is being driven by another, does not establish as a matter of law right of control in the owner. Right of control may be surrendered, as it often is, where the owner parts with the possession of his car to another. In that situation the parties stand in the relationship of bailor and bailee. The negligence of a bailee in operating an automobile is not imputable to the bailor. Mogle v. A. W. Scott Co. 144 Minn. 173, 174 N. W. 832. The existence of the marriage relation between the parties does not change their relationship or liabilities with respect to bailed property. In Nash v. Lang, 268 Mass. 407, 167 N. E. 762, the wife sued for damages to her automobile, which she had loaned to her husband. Defendant

claimed that the husband was negligent and his negligence was imputable to the wife. In a very well considered opinion, Mr. Chief Justice Rugg, speaking for the court, said that the relation between the wife and husband was that of bailor and bailee and that (268 Mass. 412, 167 N. E. 764) "the contributory negligence of the bailee, concurring with that of a third person to injure the bailed property, is not to be imputed to the bailor who is free from any negligence." In the Nash case the wife was not riding with the husband at the time of the collision. Here she was. But that does not change the result as a matter of law.

The marriage relationship does not, as a matter of law, constitute one spouse driving an automobile the agent or servant of the other present therein as a guest passenger, and consequently in such cases the negligence of the one driving is not imputable to the other. Darian v. McGrath, 215 Minn. 389, 10 N. W. (2d) 403; Munkel v. C. M. St. P. & P. R. Co. 202 Minn. 264, 278 N. W. 41; Olson v. Kennedy Trading Co. 199 Minn. 493, 272 N. W. 381.

The owner of an automobile may be the operator's guest. Where the owner is the guest of the operator of his automobile, the operator's contributory negligence is not imputable to the owner, except where the operator is the owner's servant or agent or where the operator and the owner are engaged in a joint enterprise. Mere family relationship is not enough. Sanjean v. Hyman, 302 Mass. 224, 19 N. E. (2d) 3; Gorman v. Bratka, 139 Neb. 718, 298 N. W. 691, modified on other grounds and otherwise adhered to, 140 Neb. 575, 300 N. W. 807; Kiska v. Keller (Pa.) 19 Lehigh Co. L. J. 54. The rule is the same where a wife rides in a car owned by her as the guest of her husband while he is operating it. Southern Ry. Co. v. Priester (4 Cir.) 289 F. 945; Rodgers v. Saxton, 305 Pa. 479, 158 A. 166, 80 A. L. R. 280; Watkins v. Overland M. F. Co. Inc. 325 Pa. 312, 188 A. 848; Fox v. Kaminsky, 239 Wis. 559, 2 N. W. (2d) 199. In the Rodgers case, which we cited with approval in Olson v. Kennedy Trading Co. and Darian v. McGrath, *supra*, the court said (305 Pa. 485, 158 A. 168, 80 A. L. R. 280):

"Nor is the husband-driver necessarily the agent or servant of his wife-passenger even in those cases where the wife herself has purchased the car with her own funds and has registered her ownership. The husband is still the head of the family, and when he is at the wheel of that car, even with his wife present, the presumption is that he is in control of the car, and, in the absence of evidence to the contrary, he is solely responsible for its operation. Ownership of a car does not necessarily mean control of that car, any more than ownership of any other property necessarily means control of it. An owner who leases or bails his property to another may even be a trespasser on his own property."

In the Fox case, 239 Wis. 566, 2 N. W. (2d) 202, the court held that, where a wife accompanied her husband on a trip in her car undertaken by him to check weather and lake conditions for purposes of duck hunting, it was "a plain case of a person [the wife] being a guest in her own automobile."

In New York, where the owner's responsibility statute does not apply where he is present in the automobile while it is being driven by another, the court reached a contrary conclusion in Gochee v. Wagner, 257 N. Y. 344, 178 N. E. 553, stating as the reason for the decision that when the husband enters the car he regains dominion over it and the legal right to control its operation. The decision should not be followed, because it ignores the *actual* relationship of the parties at the time of collision, by which the rights of the parties should be determined, and thus applies an arbitrary rule without regard to those which otherwise should control, and because it is opposed to the weight of authority.

Where a spouse is present in his car while the other spouse is operating it, the actual relationship of the parties with respect to possession and right of control should be determined as a fact. The presence of the wife, in cases where she owns the car, is held in some cases to permit, but not to require, an inference of agency. As said in 5 Am. Jur., Automobiles, p. 783, § 496: "The owner's presence in his car at the time an injury occurs while it is being

operated by another will not of itself preclude his right to recover for injury or damage." *Cf. Id.* p. 784, § 498, involving husband and wife cases.

The New York courts do not, however, impute the contributory negligence of one co-owner to another, although the co-owners stand in the relationship of husband and wife. In Jenks v. Veeder Contracting Co. Inc. 177 Misc. 240, 30 N. Y. S. (2d) 278 (affirmed, 264 App. Div. 979, 37 N. Y. S. [2d] 230, appeal dismissed, 289 N. Y. 787, 46 N. E. [2d] 848), where a husband and wife, co-owners of an automobile, were injured while the husband was driving, it was held that the husband's contributory negligence was not imputable to the wife. Distinguishing the Gochee case, 257 N. Y. 344, 178 N. E. 553, the court said (177 Misc. 242, 30 N. Y. S. [2d] 281):

"The decision is distinguishable from the facts here. Since the property here was jointly owned, the husband having undertaken to use it had domination of it and a legal right to control its operation. The joint owner could not, at all times, assume control of the vehicle in the course of its operation. When one joint owner is at the driving wheel and the vehicle is in motion on a highway it is enough to say that the other joint owner is not then in control of its operation and is not then in a position to assert control. An assertion of control or direction as to operation could properly be resisted by the joint owner. Whatever might ultimately be done in a law court in the event of a disagreement as to use of the vehicle, resulting in a sale or disposal of the property, the highway would be the wrong place to make the assertion of a partial right to control. In the nature of things a vehicle is controlled only by one person at one time, and rights flowing from joint ownership must be divisible in point of time. Certainly assertion of such rights in the course of operation is not timely, nor in the interest of public safety.

"Parties having equal legal title to a motor vehicle cannot be permitted to contend for the wheel in moving traffic and hence the imputation of negligence to the joint owner present upon the theory

of equal legal right to domination or control is untenable when applied to the facts of this case.

"The realities of the actual operation of vehicles on highways cannot be entirely overlooked in dealing with the rights and obligations of those present with the driver. Before the advent of the motor vehicle, similar realities were discussed with lucidity and insight by Judge Finch in Hoag v. N. Y. C. & H. R. R. R. Co. (111 N. Y. 199, 18 N. E. 648)."

Even under the New York rule the husband's negligence in the instant case was not as a matter of law imputable to plaintiff because of their relationship.

We think that the Jenks case announces the correct rule. Where a husband and a wife are co-owners of an automobile which one of them is driving and in which the other is riding at the time of a collision, the contributory negligence of the driver is not imputable to the other as a matter of law simply because of co-ownership nor because of marital relationship.

Defendant cites our own cases of Pearson v. Northland Transp. Co. 184 Minn. 560, 239 N. W. 602, and Martin v. Schiska, 183 Minn. 256, 236 N. W. 312, as holding to the contrary. Neither case is in point. The Pearson case turned on whether plaintiff's son was her agent in driving her car. In effect, the mother testified that he was. We said (184 Minn. 563, 239 N. W. 604): "The mother was riding in the car, and the son drove it for her. Agency is shown, and there is nothing to the contrary." In the Martin case the question whether the contributory negligence of one co-owner was attributable to another was not involved. The question there was whether the jury was warranted in finding that one co-owner was responsible to a third party for the negligence of the other co-owner upon the grounds of agency. We now sweep away whatever doubts such cases may cast upon the rule applicable here.

(b) Defendant also contends that the husband's negligence, if any, is imputable to plaintiff under the safety responsibility act, Id. §§ 170.01 to 170.19 (§§ 2720-101 to 2720-122), as construed in

Kangas v. Winquist, 207 Minn. 315, 291 N. W. 292, holding that a co-owner who consents to another co-owner's operation of their automobile on a public highway is liable to a party injured by the latter's negligence.

The title of the act (L. 1933, c. 351) states that its purpose is to provide *for the establishment of financial responsibility by owners of motor vehicles* for personal injuries, including death, and property damage resulting from the maintenance, use, and operation thereof. Its provisions are designed to accomplish that purpose.

Financial responsibility is secured by ridding the highways of irresponsible drivers through revocation of their licenses for cause, which includes failure to pay a final judgment (*Id.* § 170.03) "for damages on account of personal injury or damages to property" in excess of $100 resulting from the ownership or operation of a motor vehicle. A revoked license may be renewed only upon the licensee's giving "proof of his ability to respond in damages," in amounts and upon conditions prescribed, for any liability thereafter incurred resulting from the ownership or operation of a motor vehicle. Proof of ability to respond in damages consists in furnishing evidence, as required by the statute, that the licensee is insured by an insurance carrier, authorized to do business in the state, in amounts prescribed for liability for personal injuries, wrongful death, and property damage; or, in lieu thereof, the licensee may furnish bond to cover such liability or deposit collateral with the state treasurer for the payment thereof. A judgment creditor to whom an owner of a motor vehicle is liable because of the ownership or operation of a motor vehicle is authorized to sue in his own name to realize on the bond or collateral to satisfy his judgment. Nonresidents are liable the same as residents for operating motor vehicles within the state, and process may be served upon them in actions to enforce such liability by service upon the secretary of state. Section 170.04 (§ 2720-104) of the act provides:

"When any motor vehicle shall be operated upon any public street or highway of this state by any person other than the owner

with the consent of the owner, express or implied, the operator thereof shall, in case of accident, be deemed the agent of the owner of such motor vehicle in the operation thereof."

The statute is silent with respect to the rights of the owner where he sues a third person to recover for damages sustained by him as the result of the ownership or operation of a motor vehicle.

The question then is: Does the statute making the owner of an automobile liable for the negligence of any person driving it with his consent impute the driver's contributory negligence to the owner where he sues to recover damages sustained by him? Does it not only make him liable to third persons for his driver's negligence, but at the same time preclude him from recovering against them where his driver has been guilty of negligence? The answer involves a problem of statutory construction.

It is a mere truism, but one always to be kept in mind in construing statutes, that the aim and purpose of construction is to give effect to the legislative intent.

Express manifestation of legislative intent is confined to establishment of financial responsibility on the part of the owner to injured persons and to securing satisfaction of their claims by payment in money. Financial responsibility means obligation to pay to a third party. State ex rel. City of Milwaukee v. Milwaukee El. Ry. & L. Co. 144 Wis. 386, 129 N. W. 623, 140 A. S. R. 1025. As said in Holmes v. Lilygren Motor Co. Inc. 201 Minn. 44, 48, 275 N. W. 416, 418:

"It is clear that *the purpose [of the statute in question] was to make the owner of motor vehicles liable to those injured* by their operation upon public streets or highways where no such liability would otherwise exist." (Italics supplied.)

The authorities are in accord.

Parts of a statute are not to be viewed in isolation. A statute should be construed as a whole. Words and sentences are to be understood in no abstract sense, but in the light of their context, which communicates meaning and color to every part. So con-

strued, the provision of § 170.04 (§ 2720-104), that the driver caus-ing an accident shall be deemed the owner's *agent,* is to be taken as meaning that he is the agent for purposes only of holding the owner liable to persons injured by the driver's negligence. Similar statutes, providing either that the driver shall be deemed the own-er's agent or that the owner shall be liable for the driver's negli-gence, were in force prior to the adoption of ours. Such statutes were construed by the highest courts of their respective states. In Kernan v. Webb, 50 R. I. 394, 398, 148 A. 186, 188, in construing a statute providing that the driver shall be deemed the owner's agent, the court said:

"The language of the act is the operator 'shall be deemed to be the agent of the owner,' in other words, shall be considered as and judged to be the agent. *The operator is not thereby made the agent of the owner with all of the incidents of the law of principal and agent.* If, at the time of the accident, the operator is in fact an agent of the owner, the latter is liable at common law. The statute is intended to be operative and to impose a liability when there is an accident and there is no existing agency. The foundation of this statutory liability of the owner is the permission given to another to use an instrumentality which, if improperly used, is a danger and a menace to the public." (Italics supplied.)

The New York statute provides that the owner shall be liable, but the courts have construed it as an extension of the doctrine of *respondeat superior.*

In Young v. Masci, 289 U. S. 253, 53 S. Ct. 599, 77 L. ed. 1158, 88 A. L. R. 170, in answer to the contention that the New York statute imposing upon the owner liability for negligence of the operator of his automobile with his consent was unconstitutional as to a nonresident who gave his consent in New Jersey, where it created the relation of bailor and bailee between the owner and the operator, as depriving the owner of liberty of contract and of his property without due process, Mr. Justice Brandeis said (289 U. S. 258, 53 S. Ct. 601, 77 L. ed. 1158, 88 A. L. R. 170): "The statute neither

forbids the making nor alters the terms of any contract. * * * It does not purport to affect rights as between owner and bailee."

In Psota v. Long Island R. Co. 246 N. Y. 388, 393, 159 N. E. 180, 181, 62 A. L. R. 1163, the court said that the operator with the owner's consent was, in virtue of the statute making the owner liable for the operator's negligence in such a case, but which did not provide that the operator shall be deemed the owner's agent, "no longer a stranger to the owner, but became *to this extent the owner's agent.*" (Italics supplied.) In Gochee v. Wagner, 257 N. Y. 344, 347, 178 N. E. 553, 554, *supra,* the court deemed it necessary to explain the nature of the agency and said:

"One who borrows a car of the owner for his own use is a gratuitous *(commodatum)* bailee. He is not an agent of the owner. He uses the car for his own business or pleasure, and not for any purpose in which the owner is interested. Neither is he a servant of the owner. He is not subject to his direction or control. True it is that, in discussing the effect of section 282-e, it has been said that the borrower occupies the relation of a servant or agent of the owner and that the owner's liability in case of an injury incurred by the borrower's negligence is the same as it would have been if caused by an agent or servant acting in the owner's business within the scope of his employment. (*Psota v. Long Island R. R. Co.,* 246 N. Y. 388, 159 N. E. 180, 62 A. L. R. 1163.)"

Our statute is a remedial one and should be construed as such. The duty to construe a remedial statute liberally simply means that the court should so apply it as to suppress the mischief sought to be avoided by affording the remedy intended. It stops short of extending a statute to purposes and objects not mentioned therein. In its remedial aspect the statute imposes financial liability on an owner consenting to the operation of his automobile for the driver's negligence. To that extent it should be liberally construed. As Sears, P. J. (later a judge of the court of appeals) said in Gochee v. Wagner, 232 App. Div. 401, 403, 250 N. Y. S. 102, 105 (reversed on other grounds, 257 N. Y. 344, 178 N. E. 553), construing the New

York statute: "While the statute is remedial, it is remedial solely in favor of an injured third person." The subject of imputing a driver's contributory negligence to the owner is not mentioned in the statute. It is not the mischief at which the statute aims. It is entirely foreign to the purpose of the statute. The express provisions set limits which exclude the entire subject of imputed contributory negligence.

On the negative side, the court should consider whether it is likely that it was the legislative intent so to extend the doctrine of imputed contributory negligence. It is important to bear in mind, as we have pointed out, that at common law a driver's negligence is not imputable to an owner consenting to the use of his car, except where the legal relationship existing between the parties otherwise affords basis for such a result.

The doctrine of contributory negligence does not rest on a satisfactory basis. Generally, it is said to rest either on barring a plaintiff because he himself is at fault or on the rules of proximate cause. The former view is generally accepted. Butterfield v. Forrester, 11 East, 60; Rintala v. D. W. & P. Ry. Co. 159 Minn. 499, 199 N. W. 562; 4 Dunnell, Dig. & Supp. § 7013; Bohlen, "Contributory Negligence," 21 Harv. L. Rev. 233.

The doctrine of contributory negligence does not effectuate the purpose of the statute of establishing financial responsibility for negligence. On the contrary, by barring plaintiffs it operates to defeat such responsibility by enabling negligent defendants to escape liability.

Liability for a wrong should be borne by the party who caused it. Because the doctrine of contributory negligence, by permitting a defendant guilty of negligence to go scot free, fails to place the loss upon the party who should bear it, the doctrine has been justly condemned for failure to distribute loss according to fault. In Haeg v. Sprague, Warner & Co. Inc. 202 Minn. 425, 429, 281 N. W. 261, 263, Mr. Justice Holt, in emphatic and eloquent language, pointed out the injustice of permitting a negligent defendant to escape liability by invoking the rule of contributory negligence, and said

that "the rule of comparative negligence would serve justice more faithfully than that of contributory negligence." Prosser, Torts, p. 403, says: "The hardship of the doctrine of contributory negligence upon the plaintiff is readily apparent. It places upon one party the entire burden of a loss for which two are responsible." Padway, "Comparative Negligence," 16 Marq. L. Rev. 3, in discussing the comparative negligence statute of Wisconsin, points out the gross injustice of imposing upon plaintiff under modern conditions the entire burden for loss caused principally by the defendant's negligence, and quotes from 2 Blashfield, Cyc. of Auto. Law (1927 ed.) p. 1008:

"In some of its aspects it [the doctrine of contributory negligence] offends every instinct of good sportsmanship * * * the doctrine has been uncertain and unsatisfactory, and not infrequently has been productive of serious injustice.

"Like the defense of alibi in criminal cases, the defense of contributory negligence is frequently set up merely to raise a cloud of dust under cover of which to escape the penalty for a grave error."

Because the doctrine of contributory negligence enables a negligent defendant to escape liability by barring a plaintiff from recovering because of fault, however slight, it thwarts the policy of the statute, which is to impose liability to remedy the public evil of unsatisfied claims for damage resulting from the operation of automobiles by those to whom owners have loaned them.

The very reason for holding the consenting owner liable for negligence of the operator of his automobile, that of furnishing financial responsibility to an injured party, is completely absent in the owner's action to recover for damages sustained by him as a result of the concurrent negligence of the operator and the third party. Therefore, it is a *non sequitur* to say that, because the policy of the statute is to impose liability against the bailor, it also is its policy to impute to him the contributory negligence of his bailee. Gregory, "Legislative Loss Distribution in Negligence Actions," pp. 148-150.

Furthermore, to extend the doctrine of imputed contributory negligence to cases of bailor and bailee and driver and guest involves a change of existing law, which is not warranted by the terms of the statute. Mills v. Gabriel, 259 App. Div. 60, 18 N. Y. S. (2d) 78 (affirmed, 284 N. Y. 755, 31 N. E. [2d] 512). "The modern trend of the law is rather to limit the effect of that doctrine." Gochee v. Wagner, 232 App. Div. 401, 403, 250 N. Y. S. 102, 105, reversed on other grounds in 257 N. Y. 344, 178 N. E. 553, *supra*. The legislative trend in Minnesota has been distinctly against extension of the doctrine, as witness statutes entirely abolishing the defense in certain cases, such as the so-called railway labor act, Minn. St. 1941, § 219.79 (Mason St. 1927, § 4935), the workmen's compensation act, *Id.* §§ 176.01 to 176.81 (§§ 4261 to 4337-5), and other legislation. See Suess v. Arrowhead S. P. Co. 180 Minn. 21, 230 N. W. 125; Golden v. Lerch Bros. Inc. 203 Minn. 211, 281 N. W. 249. So far as there has been manifestation of legislative intent—which is shown only by legislative policy—it has been not only against extension, but in favor of curtailment, of the doctrine of contributory negligence. So the trend is elsewhere. "Steady encroachments upon the doctrine of contributory negligence have weakened its claim of authority, and only respect for its age can now be urged for its complete retention." Mole and Wilson, "A Study of Comparative Negligence," 17 Cornell L. Q. pp. 333, 604, at p. 655. The only legitimate inference permissible is that the legislative intent was to provide for financial responsibility of the bailor in favor of third parties injured by the bailee's negligence without changing the rule that a bailee's contributory negligence is not imputable to a bailor.

The courts of New York in effect adopted these views in construing their statute. Buckin v. Long Island R. Co. 286 N. Y. 146, 36 N. E. (2d) 88; Mills v. Gabriel, 284 N. Y. 755, 31 N. E. (2d) 512, affirming 259 App. Div. 60, 18 N. Y. S. (2d) 78. The opinion of the appellate division in the Mills case considered the question at length. There the court took notice of decisions to the contrary and disapproved them.

California holds to the contrary, upon the authority principally of inferior courts of New York, whose decisions, most of which were decided prior to the Mills case, were rejected as authority by the court of appeals in the Mills case adopting the decision of the appellate division. The California court deemed it inconsistent, if not shocking, that in an action by the bailor against the third party the negligence of the bailee should not be imputed and that it should be in an action by the third party against the bailor, especially where the causes of action were asserted in a single action by way of complaint and counterclaim. Milgate v. Wraith, 19 Cal. (2d) 297, 121 P. (2d) 10. Such reasoning involves the *non sequitur* to which attention has been called. We see nothing inconsistent with the views rejected by the California court. After all, the supposed case distributes liability according to fault. It places it where it belongs. As said in 17 Cornell L. Q. 158, 165, *supra*, speaking of the same views by the minority of the appellate division in the Gochee case:

"Attention is called by the minority to the singular result of such a decision upon a situation where two bailees are contributorily negligent, each damaging the car intrusted to the other. Not only would it *not* be illogical to allow the bailors to recover from each other's bailee, which would be the situation at common law anyway, but the policy of the statute would thus be well illustrated in giving the bailors a recovery against each other. Loss would be shifted to the owner, and at the same time the person causing the negligence would be liable. That the amounts recoverable by the bailors in suits against each other would depend upon the extent of the harm suffered by each and of the negligence from which it resulted seems a highly equitable solution."

The Iowa court in Secured Finance Co. v. C. R. I. & P. Ry. Co. 207 Iowa 1105, 224 N. W. 88, 61 A. L. R. 855, also adopted a contrary rule. First, it misconceived the holding of the case of Psota v. Long Island R. Co. 246 N. Y. 388, 159 N. E. 180, 62 A. L. R. 1163, *supra*, which it cited as authority for its views, to be that the bailee,

in virtue of the statute, became the bailor's agent generally, instead of only to the extent of imputing negligence in favor of a third person against the bailor, as the New York court held in that case and explained in the later case of Gochee v. Wagner, 257 N. Y. 344, 178 N. E. 553, *supra.* Secondly, it adopted the two-way test that we have already pointed out is a *non sequitur.* The holding of the Iowa court in the Secured Finance Co. case has been disapproved not only by the New York courts in the Mills case, but also by Mr. Gregory in his work on "Legislative Loss Distribution in Negligence Actions," p. 150.

In Di Leo v. Du Montier (La. App.) 195 So. 74, the court of appeals adopted the contrary view, but without stating the reasons for its decision. Apparently the court assumed that the two-way rule applied without examining the question.

The conflicting views of the New York and Iowa courts (apparently California and Louisiana had not adopted a rule at that time) are compared by Gregory in his work on "Legislative Loss Distribution in Negligence Actions," p. 150, who says that the view that the bailee's negligence is not imputable to the bailor under the statute is the "most sensible" because the purpose of the statute simply is to afford a remedy against financially irresponsible drivers. In accord, 17 Cornell L. Q. 158, *supra.*

So far as the legislature has expressly manifested its intention, it is to establish financial responsibility to injured persons by owners of motor vehicles. No other intent is manifest. An intent to extend the doctrine of imputed contributory negligence so as to bar the owner because of the driver's negligence should not be inferred, because it is not comprehended within the express provisions of the statute; because such an extension of the doctrine of imputed contributory negligence defeats the purpose of the statute to impose liability for irresponsible drivers by enabling a class of drivers, liable under rules in existence when the statute was adopted, to escape liability; and because it is entirely unlikely that the legislature would extend the doctrine in any instance, since its gen-

eral policy has been to restrict and qualify it as an unjust, if not a discredited, one.

We conclude that the rule that the bailee's negligence is not imputable to the bailor in an action by the latter against a third party is sound in principle, and we adopt it as the construction of our statute. In that view, the husband's negligence here was not imputable to plaintiff, his wife, simply because she, as owner or co-owner, consented to his driving the automobile. Our decisions in cases like Kangas v. Winquist, 207 Minn. 315, 291 N. W. 292, relied on by defendant, holding that the negligence of a co-owner operator is imputable to another co-owner, are not in point.

A new trial must be had because of the errors alluded to.

Reversed and new trial granted.

