DAVIS PONTIAC CO. *vs.* WILFRED SIROIS.

JUNE 4, 1954.

PRESENT: Flynn, C. J., Capotosto, Baker, Condon and O'Connell, JJ.

BAKER, J.   This is an action of trespass on the case for negligence arising out of a collision between two automobiles.  In the superior court the defendant's demurrer to the declaration was sustained and to such ruling the plaintiff has duly prosecuted a bill of exceptions to this court.

The declaration, which was filed January 11, 1952, alleged among other things that plaintiff, a corporation, was the owner of an automobile which at the time and place of the described accident was being operated by Edward L. Corrigan "with the consent and knowledge of the plaintiff but not as its servant or agent," and that such automobile was damaged when it collided with a car negligently operated by the servant and agent of defendant.   Although the declaration alleged that the plaintiff itself exercised due care, there was no allegation therein that at the time of the accident the operator of its car was in the exercise of such care and

none that he had furnished evidence of financial responsibility in accordance with the applicable statute.

The demurrer sets out three grounds but the one chiefly pressed is to the effect that plaintiff in and by the allegations of the declaration has not stated a cause of action against defendant. The instant case, therefore, is before us solely on an issue of pleading. The first question for consideration is whether plaintiff's declaration sufficiently sets forth a cause of action without alleging that the operator of plaintiff's car was free from negligence, in view of public laws 1950, chapter 2595, article XIX, section 1, which reads as follows:

"Civil Liability of Owners and Operators of Motor Vehicles

Sec. 1. *Imputing negligence or willful misconduct of operator to owner.*—Whenever any motor vehicle shall be used, operated, or caused to be operated upon any public highway of this state with the consent of the owner, or lessee, or bailee, thereof, expressed or implied, the operator thereof, if other than such owner, or lessee, or bailee, shall in case of accident, be deemed to be the agent of the owner or lessee, or bailee, of such motor vehicle unless such operator shall have furnished evidence of financial responsibility in the amounts set forth in section 7 of chapter 98 of the general laws, 1938, as amended, prior to such accident; and for the purposes of this act the term 'owner' shall include any person, firm, co-partnership, association or corporation having the lawful possession or control of a motor vehicle under a written sale agreement. Evidence that at the time of such accident or collision the motor vehicle was registered in the name of the defendant shall be prima facie evidence that it was being operated with the consent of said defendant, and absence of such consent shall be an affirmative defense to be set up in the answer and proved by the defendant."

The plaintiff contends that the provisions of that entire section are directed solely to the *defendant* in a pending case. It argues exhaustively that the title of the act, the

statement therein that the agency created by the statute arises only when the operator has not furnished evidence of financial responsibility, the requirements for proof of registration of defendant's motor vehicle, the necessity for defendant to file a special plea, and his burden of proof under the statute show convincingly that the legislature only intended to require the furnishing of evidence of financial responsibility by the actual operator of the car and to provide other remedial changes in the law so far as a defendant was concerned, but that none of such provisions was intended to apply to a plaintiff.

On the other hand defendant contends that the statute is in derogation of rights under the common law and that it not only establishes certain affirmative burdens upon a defendant, as the plaintiff argues, but also was clearly intended as a "two-way" provision to govern *all* owners and operators with the owner's consent whether they might be plaintiffs or defendants. He argues that the language of the statute is clear, unambiguous and broader in scope than plaintiff urges and therefore he concludes that under the settled common-law practice in this state an allegation of due care by the operator of plaintiff's automobile was necessary for sound pleading. The answer to this phase of the problem depends upon the intent of the legislature in enacting the statute.

We are not called upon to interpret the statute in all its aspects but solely as it affects the declaration in the instant case. None of the reported cases involving any of the preceding forms of the instant statute presented the precise issue now before us. We note that generally speaking in all such cases the questions at issue arose out of or were related to matters of evidence at a trial on the merits and not to a preliminary question of proper pleading, as here.

In our opinion the present statute, though in form appearing as one paragraph, is nevertheless clearly divisible into two severable parts. The first part, namely, the first

sentence of the paragraph, plainly and unambiguously creates a statutory relationship of principal and agent between the owner and one who is operating his car with his *consent,* unless the operator previously to the accident has furnished evidence of financial responsibility in a certain manner and amount as provided by law. That language nowhere, directly or indirectly, mentions or is confined to a defendant. On the contrary it clearly expresses a policy as to *all* owners and operators with the owner's consent.

It constitutes a declaration of policy and a substantive change in the law which was explained and construed in *Kernan* v. *Webb,* 50 R. I. 394, 398, where the language of the first statute of 1927 was involved. At that time the same substantial language was in the law and was presented for construction. The court there held: "If the use is with consent, the intent of the statute is to secure greater protection to the public from the operation of motor vehicles unfit for use or when negligently driven. The statute in question enlarges the legal liability of the owner who intrusts his motor vehicle to another with the privilege of using it. The language of the act is the operator 'shall be deemed to be the agent of the owner,' in other words, shall be considered as and judged to be the agent. * * * The statute is intended to be operative and to impose a liability when there is an accident and there is no existing agency. The foundation of this statutory liability of the owner is the permission given to another to use an instrumentality which, if improperly used, is a danger and a menace to the public." What was said as to the policy, intent, meaning and effect of the language in the law at that time is equally applicable to the first part of the instant statute since the language there was substantially the same as the first sentence of the instant statute.

No purpose will be served by attempting to analyze and compare in detail the law as discussed in the cases intervening between the *Kernan* case and the present time. Much

confusion results from the multiple amendments of the statute at different times and from the decisions made on existing particular.facts, sometimes after a change in the law had become effective under such amendments. It is sufficient for our purpose to note that by later amendment the pertinent language, which was passed upon in *Kernan* v. *Webb, supra,* was dropped from the statute. However, after several other amendments had been made from time to time, the statute was again amended in 1940 by bringing back essentially the same language which originally appeared in the law and was passed upon in the *Kernan* case.

It should be noted that just prior to 1940 the statute was in one sentence and was essentially and expressly limited to whenever "an action is begun to recover damages" resulting from an accident involving the use of such a motor vehicle; that the 1940 amendment dropped the above-quoted limitation and substituted the comprehensive language originally in the act when the *Kernan* case was decided; and that the provision referring to the effect of certain evidence on a defendant at the time of trial, which was a part of the one sentence before 1940, was separated by a period and made an independent sentence in the 1940 amendment. As thus amended the section remained the same under the general motor vehicle act, P. L. 1950, chap. 2595, article XIX, section 1.

If the legislature intended to restrict the meaning and effect of the amendatory language in the 1940 statute to apply solely to a defendant in a pending case, it certainly knew how such intention should be stated. The last sentence of the section was already in the law and it was expressly limited by and made applicable to a "defendant." In our judgment if the same limitation had been intended to apply also to the first part, which was being added by that amendment, the legislature would not have used the plain, comprehensive language specifically referring to "Imputing negligence or willful misconduct of operator to owner" and the

further language that an operator "with the consent of the owner * * * shall in case of accident, be deemed to be the agent of the owner * * *." It would be more reasonable to expect the addition of some qualifying words restricting the application of the amendment to the imputation of the negligence of an operator to a defendant owner.

Having in mind the order of time when the two parts of the present statute respectively came into the existing law, the plain and comprehensive language used in the 1940 amendment, the interpretation given to such language in the *Kernan* case, the different purpose and effect of each part or sentence of the statute, as gathered from the express language used, and finally the actual separation of the parts by a period, we are of the opinion that the language of the 1940 amendment, neither directly nor by necessary implication, requires a construction that the provisions now appearing in the first portion of the section were intended to be restricted or limited solely to a defendant in a pending suit. In our view the legislature intended to create in the stated conditions a statutory agency based upon consent of the owner, and the plaintiff here by the allegations of fact in the declaration brought itself within the purview of such statute.

The next question to consider is whether plaintiff has stated facts sufficient to exclude itself from the operation of the statute. The plaintiff first has alleged its ownership and registration of the car, and its *consent* to the operation thereof by another, and has not alleged that the operator had furnished evidence of financial responsibility. Therefore the declaration on its face alleges the facts from which the law expressly creates a statutory agency where no agency at common law existed. Since the declaration thus states facts amounting to a statutory agency, the plaintiff under our well-established practice must also allege the agent's freedom from contributory negligence. This it has not done.

Furthermore, having admitted by allegations all the elements from which the statute creates an agency by operation of law, plaintiff then makes the allegation that the operator was *not* the agent of the plaintiff. In the peculiar circumstances this amounts to an untenable conclusion contradictory of that which is imposed by law, and therefore is not a fact well pleaded which would be admitted by the demurrer. The plaintiff itself has not set forth any facts to show what was its relationship with the operator, or how the latter had obtained the car and the owner's consent, or for what purpose he was given the car, or what he was doing at the time of the accident. It merely assumes by a conclusion of its own interpretation of law, without allegation of supporting facts, that it may thereby nullify the effect of the other proper allegations which create an agency according to the express terms of the statute. This court therefore is not informed of necessary facts to determine whether or not he differs from a statutory agent as contemplated by this amended statute.

Certainly the legislature by the language of the 1940 amendment intended to make some kind of a statoutory agency in derogation of the common law. Without restricting ourselves at this time to determining the limitations, if any, of such agency, it is sufficient to hold that under any interpretation of the language here used there was intended and created *at least* a statutory agency of the type that was explained in *Emond* v. *Fallon*, 56 R. I. 419. Assuming that in order to avoid the effect of this statute the plaintiff might plead facts by anticipating defenses, it would have the burden to plead facts sufficient to exclude every relationship which reasonably could be contemplated as coming within the statute. It has not done so in this declaration and therefore the demurrer was properly sustained.

The cases of *Thompson* v. *Sides*, 275 Mass. 568, *Jewel Mills* v. *Gabriel*, 284 N. Y. 755, and *Christensen* v. *Hennepin Transportation Co.*, 215 Minn. 394, which plaintiff has sub-

mitted are helpful but none of them is based upon a statute such as ours. Nor are they decided on an issue of pleading as here. In the *Thompson* case, so far as appears from the opinion, the provision in that statute does not appear to be entirely the same as in the statute here. However, assuming that its language might in effect be considered similar, nevertheless that court was concerned with the interpretation of a statute which referred in express terms to a defendant only. The *Jewel Mills* and *Christensen* cases, both of which recognize authority contrary to their conclusions, were discussed and distinguished by persuasive reasoning in the case of *National Trucking & Storage Co.* v. *Driscoll*, D. C., 64 A.2d 304.

In our judgment the last-mentioned case was decided by the District of Columbia court under a statute which more nearly resembles ours than the others called to our attention. Such court found that the statute had a twofold purpose, namely, to furnish a financially responsible defendant in case one driving a car with the owner's consent negligently caused damages to another, and to promote more careful driving. The court at page 307 of its opinion stated: "We find nothing in the act to indicate that the Congress intended that a person driving an automobile with the owner's consent is the owner's agent when the owner is being sued, but is not his agent when the owner is suing. When the owner is being sued his liability is based solely upon his so-called vicarious responsibility on the theory that the negligence of the driver is imputable to him because he gave permission to the driver to operate the car. We can not understand why the negligence of the driver is not imputable to the owner when the situation is reversed and the owner is suing. In both situations the car is being driven with the consent of the owner."

After considering the history, purpose and language of our present act as a whole, it is our opinion that the language does not limit its application only to a situation

where the owner of a motor vehicle is being sued, but that it also applies in appropriate circumstances when a plaintiff owner is bringing action as in the instant case. In our judgment the reasoning in the case of *National Trucking & Storage Co.* v. *Driscoll, supra,* is sound.

Since in the circumstances alleged we have construed the statute as creating a statutory relationship of principal and agent between plaintiff and the operator of its automobile with its consent, it follows from the general principles of the law of agency that in the absence of other proper allegations the negligence, if any, of such operator may properly be imputed to his principal, the plaintiff. There was a duty therefore on the plaintiff in the circumstances here to also allege that the operator of its automobile was in the exercise of due care when the collision with the defendant's car occurred. As no such allegation was contained in its declaration, the trial justice was correct in ruling that defendant's demurrer should be sustained.

The plaintiff's exception is overruled, and the case is remitted to the superior court for further proceedings.

CONDON, J., dissenting. This decision is based upon a construction of the statute that, in my opinion, is not within the reasonable intendment of its language. I am persuaded to this view by its legislative and judicial history, the mischief it was designed to remedy, and above all by the content of the statute itself. In such light I am convinced that it was intended to apply only to defendants. Therefore, I dissent.

Despite the fact that the statute is section 1, article XIX of chapter 2595, public laws of 1950, it is not of recent origin. It has been on the statute books in its present form since 1940. Originally enacted in a substantially different form as sec. 3, chap. 1040, public laws of 1927, it was judicially construed in 1928 as applying to anyone using the owner's car with his consent. *Guerin* v. *Mongeon,* 49 R. I. 414. The next year thereafter the legislature repealed it and

enacted in its place sec. 10, chap. 1429, public laws of 1929. This new act expressly excluded from its operation a bailee or lessee of the owner.

In *Rogers* v. *Hebe Co.,* 52 R. I. 274, 275, we said: "The statute does not make a bailee the agent of the owner." And we further indicated that it did not make as drastic a change in the common law as did chap. 1040, public laws of 1927. Later in *Ford* v. *Dorcus,* 54 R. I. 1, 3, we squarely so held and stated that sec. 3, chap. 1040, public laws of 1927, as construed in *Guerin* v. *Mongeon, supra,* "evidently imposed a greater liability upon an owner of a motor vehicle than was intended by the legislature for, at its next session, it repealed said section 3 and enacted section 10 above quoted. This new section differed materially from the section which it superseded and it must be presumed that the legislature thereby intended to establish a rule different from that previously announced by the court." We again pointed out that difference in *Emond* v. *Fallon,* 56 R. I. 419. And as recently as *Gallo* v. *American Egg Co.,* 76 R. I. 450, 455, we said that under the present statute as formerly numbered "an owner of an automobile is not responsible for the conduct of his bailee."

As thus construed sec. 10 remained unchanged until 1933 when it was replaced by chap. 2046, public laws of 1933. In *Gemma* v. *Rotondo,* 62 R. I. 293, decided in 1939, we held that chapter entirely amended sec. 10 and substituted for it a substantially new act. However, the legislature thereupon repealed chap. 2046 the following year and enacted chap. 867, public laws of 1940, which is now section 1, art. XIX, chap. 2595, public laws of 1950, herein under review. Its first sentence is a reenactment word for word of sec. 10, chap. 1429, public laws of 1929. And the second sentence is taken almost verbatim from chap. 2046, public laws of 1933.

This somewhat checkered history of the statute and the cases in which, in its varied phases, it has been judicially construed give not the slightest inkling that the legislature

was attempting to alter the common law status of a plaintiff in an action to establish defendant's liability in tort. On the contrary the original form of the statute, the subsequent legislative amendments, and the opinions of this court construing the same suggest that the sole concern of the legislature was to alter the common law requirements for establishing *liability* of the owner of a motor vehicle for damage caused by its negligent operation on the public highway by another.

This concern was strikingly evident in the legislature's prompt repeal of sec. 3, chap. 1040, when they were advised by this court's opinion in the *Guerin* case that the language of that section made an owner *liable* for the conduct of anyone who was operating the car with the owner's consent. And there was the same prompt reaction when the full import of chap. 2046 was made known in the *Gemma* case.

In each instance the legislature showed that it was concerned about the plight of plaintiffs in the trial of actions for negligence against owners of motor vehicles involved in highway accidents while said vehicles were being operated by persons other than the owners. Such plight resulted from the rule of the common law requiring the plaintiff in such a case to prove that at the time of the accident the operator was operating the vehicle as the servant or agent of the owner and within the scope of such employment or agency. It was often impossible for plaintiffs to meet those requirements with the resulting mischief that defendants escaped liability without having to present their cases to a jury. To correct such mischief the legislature formulated a new rule of agency to be applied to defendants in cases of that nature. But in no instance did it give any indication that it intended to abrogate the common law beyond giving a remedy to correct that particular mischief affecting plaintiffs. In fact it does not appear that defendants were ever placed in a similar plight by the common law. No case of that kind has been cited to us nor have I found any in our reports

where defendants have been thereby placed at a disadvantage in defending plaintiffs' claims against them.

Such, therefore, being the sole mischief arising from the application of the existing law the statute should be construed as intended to correct only that mischief and nothing more. "The legislature may not be presumed to make any innovation upon the common law further than is required by the mischief to be remedied." *Psota* v. *Long Island R. R.*, 246 N. Y. 388. Since the statute under review here is in derogation of the common law it should be construed strictly. *Gaspee Cab Inc.* v. *McGovern*, 51 R. I. 247. Unless it is otherwise clear that the legislature intended to go beyond the immediate object of the legislation it must be presumed that it did not so intend. *Bloomfield* v. *Brown*, 67 R. I. 452; *Pickering* v. *Pickering*, 64 R. I. 112. The legislative intent is to be gathered from the purpose for which the statute was passed. *State* v. *Hudson*, 55 R. I. 141. In my opinion the object of the statute here was to enable a plaintiff to have the jury pass upon the question of a defendant's liability for the conduct of the operator of his car. In the absence of a clear intent of the legislature to derogate further from the common law the instant statute should not be extended beyond such object. *Langlois* v. *Dunn Worsted Mills*, 25 R. I. 645.

The content of the statute, I submit, also supports the view that it was not intended to apply to plaintiff. In the first place its title "Civil Liability of Owners and Operators of Motor Vehicles" gives an indication of such intent. The use of the word "liability" to describe the purpose of the section with reference to owners and operators of motor vehicles on the public highways is significant. That word has been said to be appropriate to express an obligation sounding in tort, *Boston Elevated Ry.* v. *Metropolitan Transit Authority*, 323 Mass. 562, and that its common meaning is to pay a debt owed. *Grand Trunk Western R. R.* v. *Boyd*, 321 Mich. 693. "Generally speaking, the

word 'liability' expresses some form of obligation, and it is a particularly apt term to state an obligation to pay money because of a disregard of the requirements of a contract, as well as on account of tortious conduct, or because of the existence of a judgment." 53 C.J.S., Liability, p. 17.

Of course the title of an act cannot control its construction, but it may properly be considered in aid thereof. *Armour & Co.* v. *New York, New Haven & Hartford R. R.,* 41 R. I. 361. It seems unusually helpful here especially when it is considered in connection with the second clause of the first sentence of the section relating to evidence of *financial responsibility* on the part of the operator. Certainly the language of the law does not ordinarily speak of the *liability* of a plaintiff. On the contrary it is customarily associated with a defendant's obligation to respond in damages. And it would seem that such was the legislative intent here as shown by the legislature's exemption from the section of an owner whose operator had furnished evidence of financial responsibility. I submit it is a strained construction that applies such language to include plaintiffs.

If we examine the first sentence of the section as a whole more closely, we shall find that it indicates legislative contemplation of an owner's duty possibly to pay compensation for an injury caused by the negligent operation of his car by another on the public highway. In other words the legislature foresees him as a possible defendant resisting a claim for damages on the ground that under the common law he is not liable because plaintiff presented no evidence that the defendant's car was being operated by his servant or agent at the time of the accident. The first clause of the first sentence strips him of that defense and makes the operator, who is not his lessee or bailee, the owner's statutory agent, if the car was being operated with his consent. But if he can show that the operator has furnished evidence of financial responsibility in accordance with the statute he escapes the impact of the section by virtue of the second

clause, and retains his common-law defenses. All thought of the owner as plaintiff is entirely absent from the statute when viewed in this light.

Now if we consider the first and second sentences of the section together as integral and related parts of the section as a whole, and I submit we should, the above view is strongly confirmed. By the second sentence the legislative intent implicit in the first is made crystal clear. Here the legislature removes all doubt, if there ever was any, that it is legislating with reference to the owner as a defendant. Having deprived him of his common-law defenses it now reverses the burden of proof and requires him to plead and prove absence of consent if he relies upon that fact as a defense. But the majority state that these two sentences are "clearly divisible" and "severable" and, as I understand their opinion, should not be read together as parts of an integrated whole paragraph. Only by thus divorcing them and reading the first as though the second did not exist can the construction that this is solely a defendant's statute be avoided. For my part, what the legislature has so plainly joined together I must decline to put asunder.

In a number of jurisdictions statutes having some resemblance to ours have been variously construed. As authority for their construction the majority cite *National Trucking & Storage Co.* v. *Driscoll*, D. C., 64 A.2d 304. They state that the statute involved in that case "more nearly resembles ours than the others called to our attention." Such statute is quoted on page 305 of that court's opinion. In my opinion it bears slight resemblance to our statute now under review. However, it does more nearly resemble in some respects P. L. 1927, chap. 1040, sec. 3. But such section, as I have hereinbefore noted, was repealed in 1929 because it was too sweeping in that by this court's construction it included anyone who operated the owner's car with his consent. Our legislature did not intend to include a lessee or bailee of the owner. In the above-cited case the District of Columbia

court construed their statute to apply to bailees. Furthermore from their quotation of said statute it does not appear that it contains any language comparable to the provisions of our statute with reference to evidence of the operator's financial responsibility or to the second sentence relating to the pleading and proof by the owner of absence of consent. On the whole, therefore, that case, in my opinion, furnishes no support for a like construction of the wholly different language of our statute.

On the other hand plaintiff has cited three cases which hold that statutes substantially similar in some respects to the one in the above-cited case from the District of Columbia apply only to defendants. My colleagues dismiss these cases because in their opinion they are not "based upon a statute such as ours." Certainly, that is true, but the statutes in those cases are no more unlike our statute than the statute in the above-cited *National Trucking & Storage Co.* v. *Driscoll* case. I do not rely upon those cases because of any identity between the statutes there involved and ours but because in general such cases support the view that statutes of this kind are to be construed strictly as applicable only to defendants unless their language necessarily implies that they are also applicable to plaintiffs.

Before concluding I must excuse this long dissent on the ground that I deem this question a most important one in the construction of statutes and especially a statute that derogates from the common law so radically as the instant statute. Of course the heavens will not fall because of the majority's construction, but I apprehend unfortunate consequences may flow from it. There will be no net gain. For one thing I cannot conceive how highway safety will be promoted. Whether viewed as "one way" or "two ways" the statute contributes little or nothing to the attainment of that much desired goal. After all, it is designed chiefly to assure financial responsibility of operators and owners of motor vehicles, and only incidentally if at all to promote

highway safety. Experience has shown that assurance of that kind does not decrease the hazards of the highway. States with compulsory automobile liability insurance do not appear to rank higher in that regard than states without it. In fact there is a school of thought which stoutly maintains that such insurance tends to retard progress toward greater care in the operation of motor vehicles on the highways. In any event if that is a legislative objective of the statute under review and the legislature deems that objective will be promoted by making such statute of universal application to plaintiffs as well as defendants the legislature should make its intention clear beyond question. This court should not by liberal construction incorporate into the statute a policy or rule so radically derogating from the common law. Judicial legislation of that kind seldom if ever works for good. What seems to be so desirable and necessary to declare by judicial fiat today may all too soon return to plague us tomorrow. Thus is the court the architect of its own misfortunes. Prudence, if nothing else, suggests that we stay in our own domain and let the legislature wrestle with policies of state.

*William A. Gunning,* for plaintiff.

*Edwards & Angell, Edward F. Hindle,* for defendant.